[No. G040920. Fourth Dist., Div. Three. Mar. 30, 2010.]

SYLVIA COTTON et al., Plaintiffs and Appellants, v.
STARCARE MEDICAL GROUP, INC., Defendant and Respondent.

[No. G041809. Fourth Dist., Div. Three. Mar. 30, 2010.]

SYLVIA COTTON et al., Plaintiffs and Appellants, v.
PACIFICARE OF CALIFORNIA, INC., Defendant and Respondent.

**COUNSEL**

Balisok & Associates, Russell S. Balisok and Steven C. Wilheim for Plaintiffs and Appellants.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg and Thomas R. Freeman for Defendant and Respondent StarCare Medical Group, Inc.

Sedgwick, Detert, Moran & Arnold, David M. Humiston, Gary S. Pancer, Douglas J. Collodel and Dina R. Richman for Defendant and Respondent PacifiCare of California, Inc.

**OPINION**

**RYLAARSDAM, Acting P. J.**—Plaintiffs Sylvia Cotton, Janice Mitchell, Patricia Miller and Terrie Essex appeal from judgments dismissing their claims against defendants StarCare Medical Group, Inc. (StarCare), and PacifiCare of California, Inc. (PacifiCare). In case No. G040920, the court entered judgment for StarCare after sustaining its demurrer to plaintiffs' original complaint without leave to amend and denying a motion to either set aside the ruling or grant reconsideration of it. In case No. G041809, the court dismissed plaintiffs' action against PacifiCare after sustaining its demurrer to the first amended complaint without leave to amend.

We granted a request to consolidate the appeals because they arose from the same underlying lawsuit and it appeared they presented the same primary issue, whether plaintiffs' claims against these defendants are preempted by the federal Medicare Act (42 U.S.C. § 1395 et seq.; Medicare Act). Upon further review, we reverse the judgment dismissing plaintiffs' action against StarCare because the trial court abused its discretion by ruling on StarCare's demurrer to the original complaint after the parties stipulated to continue the

hearing on objections to the original complaint and allow plaintiffs an opportunity to submit an amended complaint. As for the judgment dismissing the action against PacifiCare, we shall affirm the dismissal as to one cause of action but reverse as to the remaining claims.

## DISCUSSION

### 1. *Case No. G040920*

#### a. *Background*

The original complaint identified plaintiffs as the children of T.J. Jackson, a man over 64 years of age. They alleged Jackson "assigned his Medicare benefit to and enrolled as a member of 'Secure Horizons,' a health plan for seniors operated by PacifiCare," which "agreed to provide to [Jackson] all of the services to which he was entitled under Medicare . . . ." StarCare is described as a "business organization of unknown type" in some manner related to Gateway Medical Group, Inc., an entity described "as a 'medical group.'" Plaintiffs alleged StarCare and Gateway contracted with physicians to secure the latters' services and, in turn, contracted with Secure Horizons to "provide all 'physician services'" to enrollees plus "'utilization review,' a process by which requests for authorization for medical services of any kind, submitted on behalf of enrollees . . . are reviewed to determine medical appropriateness . . . ."

Plaintiffs alleged that, after Jackson underwent surgery to repair a broken leg, he went to a nursing facility named St. Edna Subacute and Rehabilitation Center (St. Edna's) operated by another named defendant, Covenant Care California (Covenant). They pleaded St. Edna's failed to provide adequate care to Jackson, causing him to "suffer from starvation, dehydration, and infection, as well as emotional distress," ultimately resulting in his death.

The complaint alleged StarCare was obligated to oversee Jackson's treatment while at St. Edna's, but allowed its receipt of "a fixed or periodic fee" for services and its participation "in a risk sharing agreement" that gave it a portion of "any savings resulting from the denial of reasonably necessary medical care," to affect its decisions concerning his health care. Thus, StarCare breached its duties to "review requests for . . . medical service" based solely on "whether the requested service was reasonably medically necessary" and to "conduct utilization review and quality assurance activities without regard for the cost," and also failed to inform Jackson and his family of its financial conflicts of interest.

StarCare and other defendants filed demurrers and motions to strike the complaint. In part StarCare's demurrer argued the causes of action alleged against it were preempted by the Medicare Act.

The court set a hearing on the demurrers and motions to strike for May 2, 2008. On April 24, the parties submitted an executed stipulation agreeing to continue the hearing to June 6. The trial court denied the request, apparently because it failed to explain the necessity for a continuance.

On April 29, the parties filed an amended stipulation. This stipulation explained that, "upon review of [d]efendants' demurrers and motions to strike" to the original complaint, "[p]laintiffs' counsel has determined that it would be in the interests of justice and economy for [p]laintiffs to amend the complaint to address and attempt to resolve the issues presented by [d]efendant[s]," but that "[p]laintiffs' lead counsel [was] on vacation . . . through May 6 . . . and w[ould] need until May 30 . . . to prepare and file an amended complaint . . . ." Based on these grounds, the parties stipulated "the hearing on all . . . demurrers and motions to strike . . . shall be continued to June 6 . . . ." (Boldface omitted.) Citing the goal of "expeditiously . . . litigat[ing] these cases," concluding the second stipulation's extension request did not "actually [contain a] stipulation for an amendment" or "any specific date . . . by which the amendment [would] be done," plus a disbelief that lead counsel's vacation would in "some way impair the law firm['s] . . . ability to . . . amend" the complaint, the trial judge refused to accept the second stipulation.

The court then sustained StarCare's demurrer to the original complaint without leave to amend on preemption grounds. Plaintiffs moved to set aside the ruling or to reconsider it, but the trial court denied this request as well and entered judgment dismissing the action against StarCare.

b. *Denial of Continuance*

Plaintiffs' first contention is a procedural one; the trial court abused its discretion by rejecting the parties' stipulation to continue the hearing on the demurrers and motions to strike. We agree.

■ "A stipulation in proper form is binding upon the parties if it is within the authority of the attorney. [Citations.] Unless contrary to law, court rule or public policy, a stipulation is also binding upon the court. [Citations.]"

(*Bechtel Corp. v. Superior Court* (1973) 33 Cal.App.3d 405, 411–412 [109 Cal.Rptr. 138]; see also *Glade v. Superior Court* (1978) 76 Cal.App.3d 738, 744 [143 Cal.Rptr. 119] ["a stipulation in proper form is binding upon a court unless it is contrary to law, court rule, or public policy" or "if it purports to bind the court upon a question of law"].) Since the parties sought a continuance of the hearing on the demurrers and motions to strike, they needed to show good cause for it. (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 716 [15 Cal.Rptr.3d 609]; Cal. Rules of Court, rule 3.1332(c).) Here, plaintiffs and all defendants who filed demurrers or motions to strike the original complaint agreed to continue the hearing on their objections and allow plaintiffs' counsel, who was temporarily absent from the firm's office, the opportunity to consider filing an amended complaint that would eliminate or limit the objections. Thus, good cause existed for the stipulated one-month continuance sought by the parties. (*Pham v. Nguyen* (1997) 54 Cal.App.4th 11, 16–17 [62 Cal.Rptr.2d 422]; Code Civ. Proc., § 595.2; Cal. Rules of Court, rule 3.1332(c)(3), (d)(3) & (9).)

The trial court's concern for avoiding undue delay in the proceedings is contradicted by the contents of the stipulation. The second stipulation provided a date, May 30, by which plaintiffs were to file an amended complaint. At the hearing, plaintiffs' counsel also explained that since filing the original complaint they had been "going through additional medical records" and other information defendants had provided that would allow them to amend the complaint and "address some of the issues with regard to the demurrers" and "sufficiency of the pleadings . . . ." Thus, this is not a case where the parties were dilatory in litigating the issues. If it had allowed a continuance, the court could have notified the parties of its intent to limit future delays. While the trial judge noted the second stipulation did not include an express agreement to file an amended complaint, the contrary is clear from the terms of that stipulation. Defendants were willing to afford plaintiffs the opportunity to file an amended complaint before seeking a ruling on their objections to the original complaint.

The order denying the stipulated continuance request is governed by the abuse of discretion standard. "An abuse of discretion occurs when, in light of applicable law and considering all relevant circumstances, the court's ruling exceeds the bounds of reason. [Citations.]" (*North American Capacity Ins. Co. v. Claremont Liability Ins. Co.* (2009) 177 Cal.App.4th 272, 285 [99 Cal.Rptr.3d 225]; see also *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339].) "[T]rial court discretion is not unlimited. 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. [Citation.]' [Citations.]" (*Westside*

*Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355 [188 Cal.Rptr. 873, 657 P.2d 365].)

"Action that transgresses the confines of the applicable principles of law" constitutes "an 'abuse' of discretion. [Citation.]" (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].) "The trial judge must exercise his discretion with due regard to all interests involved. The denial of a continuance which has the practical effect of denying the applicant a fair hearing is often held reversible error. [Citations.]" (*Cohen v. Herbert* (1960) 186 Cal.App.2d 488, 494 [8 Cal.Rptr. 922].) These principles apply in this case.

We conclude the trial court abused its discretion by denying a continuance that effectively barred plaintiffs from responding to the demurrers and motions to strike by either filing an amended complaint or written opposition. Therefore, the judgment in case No. G040920 is reversed.

## 2. *Case No. G041809*

### a. *Introduction*

The primary issue here is whether plaintiffs' causes of action are preempted by title 42 United States Code section 1395w-26(b)(3) (section 1395w-26(b)(3)), part of the Medicare Act. It declares that, except for laws governing licensing and solvency, "[t]he standards established under this part shall supersede any State law or regulation . . . with respect to M[edicare ]A[dvantage] plans which are offered by M[edicare ]A[advantage] organizations . . . ." (§ 1395w-26(b)(3).)

PacifiCare argues plaintiffs' claims against it are either expressly or at least impliedly preempted by section 1395w-26(b)(3). It further contends the statute's licensing law exception is inapplicable because that provision only applies to the acquisition of a license, not its maintenance. Plaintiffs dispute the preemption claim and alternately contend leave to amend should have been granted because some of the causes of action could be based on state licensing laws.

### b. *Background*

In an appeal from a judgment entered after the sustaining of demurrer without leave to amend "we assume the truth of all properly pleaded material allegations of the complaint [citations] and give it a reasonable interpretation by reading it as a whole and its parts in context [citation]." (*Phillips v. Desert*

*Hospital Dist.* (1989) 49 Cal.3d 699, 702 [263 Cal.Rptr. 119, 780 P.2d 349].) Thus, our summary of the facts is taken from that pleading.

The first amended complaint names nine defendants and alleges 10 causes of action. Paragraph 1 declares "[t]he gravamen of this action is elder abuse, for the remedies provided in the Elder Abuse Act (Welf. & Inst. Code, § 15657) . . . . This action also seeks damages for wrongful death under [Code of Civil Procedure section] 377.60 et seq. As set forth hereinafter, . . . defendants . . . at various times . . . breached their duty of care, and have committed 'neglect' and 'physical abuse' as those terms are used in [Welfare and Institutions Code section] 15657."

The amended complaint describes PacifiCare as a health maintenance organization offering a "variety of health plans." Secure Horizons, one of its plans, is "financed by the federal Medicare program," which "pays Secure Horizons a prepaid or periodic fee for each . . . enrollee . . . ." In turn, PacifiCare contracts with hospitals and entities such as StarCare "to provide specified ranges or categories of care . . . in return for a prepaid or periodic fee."

Plaintiffs repeat the allegations of their relationship to Jackson, his enroll-ment in Secure Horizons, StarCare's status as an entity obligated to provide physician services and utilization review of service requests for Secure Horizons's Orange County enrollees, Jackson's postsurgical rehabilitation placement at St. Edna's, and that entity's failure to provide him with adequate nursing care. But the amended complaint's focus is on defendants' alleged dispute concerning financial responsibility for Jackson's care and the failure to promptly provide it to him after his removal from St. Edna's and admission to a hospital.

According to the amended complaint, until April 2006 Jackson lived in Los Angeles County where PacifiCare had assigned him to an entity named La Vida Prairie Medical Group, Inc. (La Vida), for physician services and Tenet HealthSystem Medical, Inc. (Tenet), for hospital services. That month Jackson moved to Anaheim Hills. He promptly notified PacifiCare of his new residence and it informed Jackson his new plan providers would be based in Orange County. But PacifiCare failed to authorize a change in providers until mid-January 2007. At that time PacifiCare assigned StarCare and Fountain Valley Regional Medical Center (Fountain Valley) to be Jackson's local health care service providers effective as of February 1.

On December 31, 2006, Jackson fell, breaking his leg. He was taken to a nearby hospital that belonged to another health care plan where medical personnel performed surgery to repair the injury. Later, Jackson was moved to

St. Edna's for rehabilitation. Jackson was taken to Fountain Valley on January 31 after being found dehydrated, malnourished, suffering from an infection at the site of his surgery, and, as a result, "in need of urgent care including surgery . . . ." But a dispute between PacifiCare and its network providers over financial responsibility for Jackson's medical care delayed the needed treatment until February 7 or 8. At that time he experienced a sudden and uncontrolled increase in his blood pressure that caused intercranial hemorrhaging resulting in irreversible brain injury. Jackson died on February 8.

PacifiCare is named in the amended complaint's fifth through 10th causes of action. The fifth, sixth, and seventh counts were for negligence-willful misconduct, breach of fiduciary duty, and constructive fraud. Plaintiffs alleged PacifiCare "knew that because [Jackson] was out of La Vida's and Tenet's network, . . . it was financially responsible for [his] care," but "even though [Jackson] was . . . admitted as an emergent patient . . . and manifestly in need of urgent care including surgery" it failed to promptly arrange for the needed care because of the financial responsibility dispute. This failure also resulted in a breach of PacifiCare's fiduciary duties "as a health care provider . . . to cover the cost of 'out of network' care for [Jackson] . . . on and after January 31," and "not to let . . . financial considerations adversely affect [its] health care decision making."

The eighth count sought recovery for bad faith, alleging PacifiCare "acted as an insurer" by "enter[ing] into the . . . agreement with the federal Medicare plan . . . to assume the risk of providing care to enrollees, . . ." which it breached "by unreasonably denying coverage for [Jackson's] medical care . . . ." The ninth count alleged fraudulent concealment because PacifiCare "failed to disclose to [Jackson] and his family that [he] was not [receiving] and would not receive necessary . . . care because [PacifiCare did not] want[] to do anything which might subject [it] to liability or financial risk for the cost of his care," and they reasonably relied on PacifiCare's "statements . . . that the care [Jackson] was receiving . . . was adequate and suitable . . . ." Finally, the 10th cause of action sought recovery for wrongful death.

c. *Federal Preemption*

(1) *Background*

Before 1997 the Medicare Act did not contain a preemption provision. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 423 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) However, the Medicare Act did provide an administrative procedure allowing the Department of Health and Human Services (HHS) to review benefit claim denials that limited judicial review to

an action in federal court only if an unsuccessful claim exceeded a specified amount. (42 U.S.C. § 405(g) & (h); *Heckler v. Ringer* (1984) 466 U.S. 602, 606–607 [80 L.Ed.2d 622, 104 S.Ct. 2013].) *Ringer* held the failure to comply with this administrative procedure barred a legal action if a beneficiary sued for a remedy " 'inextricably intertwined' with [a] claim[] for benefits," or if " 'both the standing and the substantive basis for the presentation' of the claim[] is the [Medicare] Act." (*Heckler v. Ringer, supra,* 466 U.S. at pp. 614, 615.)

In *McCall v. PacifiCare of Cal., Inc., supra,* 25 Cal.4th 412, a Medicare beneficiary enrolled with PacifiCare suffering from progressive lung disease, along with his wife, sued PacifiCare alleging causes of action for negligence, willful misconduct, fraud, and infliction of emotional distress. The plaintiffs claimed the beneficiary was forced to disenroll from the defendant's plan because it refused to authorize him to see a specialist concerning a lung transplant. The trial court sustained the defendant's demurrer without leave to amend, finding the plaintiffs were limited to the Medicare Act's administrative review procedure. The Court of Appeal reversed the judgment and the Supreme Court agreed with the appellate court's result.

First, *McCall* held *Ringer's* standing and substantive basis tests did not apply in the context of a "complaint seek[ing], on state tort law grounds, not reimbursement for an assertedly covered procedure, but, rather, damages assertedly flowing from conduct only incidentally related to the wrongful denial of a benefits claim." (*McCall v. PacifiCare of Cal., Inc., supra,* 25 Cal.4th at p. 419.) Second, finding a "clear implication . . . Congress left open a wide field for the operation of state law pertaining to standards for the practice of medicine and the manner in which medical services are delivered to Medicare beneficiaries" (*id.* at p. 423), the court held "[t]he 'inextricably intertwined' language in *Ringer* is more correctly read as sweeping within the administrative review process only those claims that, 'at bottom,' seek reimbursement or payment for medical services, but not a claim . . . which . . . as pleaded incidentally refers to a denial of benefits under the Medicare Act . . . [citation]" (*id.* at p. 425). After individually reviewing the causes of action pleaded by the plaintiffs, *McCall* concluded "[b]ecause the McCalls may be able to prove the elements of some or all of their causes of action without regard, or only incidentally, to Medicare coverage determinations, because . . . none of their causes of action seeks, at bottom, payment or reimbursement of a Medicare claim or falls within the Medicare administrative review process, and because the harm they allegedly suffered thus is not remediable within that process, it follows that the Court of Appeal correctly reversed the trial court[] . . . ." (*Id.* at p. 426, fn. omitted.)

In 1997, Congress enacted part C of the Medicare Act authorizing the Centers for Medicare & Medicaid Services (CMS), an agency within HHS, to

contract with private managed health care organizations to provide individuals with the Medicare benefits they would be entitled to receive under part A (hospital services) and part B (outpatient services) of the Act. (42 U.S.C. § 1395w-21 et seq.) Initially called the Medicare+Choice program, part C was later renamed Medicare Advantage. (70 Fed.Reg. 4588 (Jan. 28, 2005).) Part C also directed HHS to issue regulations establishing standards "for Medicare+Choice organizations and plans consistent with, and to carry out, this part." (42 U.S.C. § 1395w-26(b)(1).) The 1997 law contained a preemption clause barring state laws and regulations "inconsistent" with the standards issued by CMS and all state standards relating to four specific areas. (69 Fed.Reg. 46866, 46913 (Aug. 3, 2004).)

In 2003, Congress enacted the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA). (Pub.L. No. 108-173 (Dec. 8, 2003) 117 Stat. 2066.) The MMA amended section 1395w-26(b)(3) by replacing the prior limited preemption provision with the current language declaring "[t]he standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." (§ 1395w-26(b)(3).)

### (2) *General Principles*

 "Article VI, cl. 2, of the [United States] Constitution provides that the laws of the United States 'shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.' Consistent with that command, we have long recognized that state laws that conflict with federal law are 'without effect.' [Citation.] [¶] . . . Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose. [Citation.] If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains. Pre-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law. [Citation.]" (*Altria Group, Inc. v. Good* (2008) 555 U.S. 70, ___ [172 L.Ed.2d 398, 129 S.Ct. 538, 543]; see also *Dowhal v. SmithKline Beecham Consumer Healthcare* (2004) 32 Cal.4th 910, 923 [12 Cal.Rptr.3d 262, 88 P.3d 1].)

"[I]nquiry into the scope of a statute's pre-emptive effect is guided by the rule that ' "[t]he purpose of Congress is the ultimate touchstone" in every pre-emption case.' [Citation.]" (*Altria Group, Inc. v. Good, supra,* 555 U.S. at p. ___ [129 S.Ct. at p. 543]; accord, *Medtronic, Inc. v. Lohr* (1996) 518 U.S. 470, 485 [135 L.Ed.2d 700, 116 S.Ct. 2240].) But the Supreme Court has

counseled that "[w]hen addressing questions of express or implied preemption, we begin our analysis 'with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' [Citation.] That assumption applies with particular force when Congress has legislated in a field traditionally occupied by the States. [Citations.]" (*Altria Group, Inc. v. Good, supra,* 555 U.S. at p. ___ [129 S.Ct. at p. 543]; see *Dowhal v. SmithKline Beecham Consumer Healthcare, supra,* 32 Cal.4th at p. 923.)

(3) *Express Preemption*

PacifiCare contends section 1395w-26(b)(3) expressly preempts plaintiffs' claims against it, citing both the statute's reference to "any State law or regulation" other than licensing and solvency laws and its legislative history. We disagree.

■ The statute's use of the term "standards" and the phrases "law or regulation" and "with respect to MA plans" reflect Congress intended "to preempt only 'positive state enactments,' that is, laws and administrative regulations, but not the common law. [Citation.]" (*Yarick v. PacifiCare of California* (2009) 179 Cal.App.4th 1158, 1165–1166 [102 Cal.Rptr.3d 379].) For example, in *Sprietsma v. Mercury Marine* (2002) 537 U.S. 51 [154 L.Ed.2d 466, 123 S.Ct. 518], the Supreme Court held a provision of the Federal Boat Safety Act of 1971 (46 U.S.C. § 4301 et seq.) precluding states from enacting or implementing "a law or regulation . . . not identical to a regulation prescribed under . . . this title" (46 U.S.C. § 4306), did not expressly preempt a state common law action seeking damages arising from a boat accident. "We think that this language is most naturally read as not encompassing common-law claims . . . ." (*Sprietsma v. Mercury Marine, supra,* 537 U.S. at p. 63.) "If 'law' were read broadly so as to include the common law, it might also be interpreted to include regulations, which would render the express reference to 'regulation' in the pre-emption clause superfluous." (*Ibid.*)

■ CMS's proposed rule implementing the MMA's Medicare Advantage plan reached the same result. It noted "tort law, and often contract law, generally are developed based on case law precedents established by courts, rather than statutes enacted by legislators or regulations promulgated by State officials," and concluded "Congress intended to preempt only the latter type of State standards." (69 Fed.Reg. 46866, 46914 (Aug. 3, 2004).)

In addition, section 1395w-26(b)(3) extends only to positive state laws or regulations "with respect to MA plans." The phrase "with respect to" has been construed to mean "with reference to, relating to, or pertaining to.

[Citations.]" (*Phoenix Leasing, Inc. v. Sure Broadcasting, Inc.* (D.Nev. 1994) 843 F.Supp. 1379, 1388; see also *Hartford Casualty Ins. Co. v. Travelers Indemnity Co.* (2003) 110 Cal.App.4th 710, 719 [2 Cal.Rptr.3d 18] [phrase "indicates some relationship"].)

In *Yarick v. PacifiCare of California, supra,* 179 Cal.App.4th 1158, the plaintiff alleged causes of action for negligence, willful misconduct, elder abuse, and wrongful death against a managed health care plan based on its purported violation of duties created by provisions of the Knox-Keene Health Care Service Plan Act of 1975 (Health & Saf. Code, § 1340 et seq.). Noting "[a]s to all four causes of action, [the plaintiff] has alleged [the defendant's] duty arose from provisions of the Health and Safety Code . . ." (179 Cal.App.4th at p. 1166) and that "regulations under the MA program address these same duties" (*id.* at p. 1167), *Yarick* held "by the express terms of the federal preemption statute, the standards established under the Health and Safety Code are superseded" (*ibid.*).

■ The first amended complaint at issue here states plaintiffs are seeking "remedies provided in the Elder Abuse Act . . . ." (See Welf. & Inst. Code, § 15600 et seq.) But unlike the act considered in *Yarick,* the elder abuse law's purpose " 'is essentially to protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect.' [Citation.]" (*Benun v. Superior Court* (2004) 123 Cal.App.4th 113, 123 [20 Cal.Rptr.3d 26], quoting *Delaney v. Baker* (1999) 20 Cal.4th 23, 33 [82 Cal.Rptr.2d 610, 971 P.2d 986].) It addresses "[p]hysical" or "financial abuse," "neglect, . . . abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering," "[t]he deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering" (Welf. & Inst. Code, § 15610.07), or the "negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise" (Welf. & Inst. Code, § 15610.57, subd. (a)(1)). Thus, plaintiffs' reliance on the Elder Abuse Act does not support preemption of their causes of action.

■ Nor does the Medicare Act's legislative history support PacifiCare's express preemption claim. From the Medicare Act's very inception, section 1395 has declared: "Nothing in this subchapter shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided, or over the selection, tenure, or compensation of any officer or employee of any institution, agency, or person providing health services; or to exercise any supervision or control over the administration or operation of any such institution, agency, or person." (42 U.S.C. § 1395.) Citing this

section, *McCall* held "[b]y clear implication . . . Congress left open a wide field for the operation of state law pertaining to standards for the practice of medicine and the manner in which medical services are delivered to Medicare beneficiaries." (*McCall v. PacifiCare of Cal., Inc., supra*, 25 Cal.4th at p. 423.)

■ Finally, PacifiCare relies on the broad construction given to the Employee Retirement Income Security Act of 1974's (29 U.S.C. § 1001 et seq.) (ERISA) preemption statute (29 U.S.C. § 1144(a)) and argues section 1395w-26(b)(3) "tracks th[e] language" of the ERISA provision. Not so. Section 1144(a) of title 29 of the United States Code declares ERISA's "provisions . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." A reference to "any and all State laws" is a far cry from "any State law or regulation . . . with respect to MA plans . . . ." (§ 1395w-26(b)(3).) We conclude the first amended complaint's causes of action are not expressly preempted by the Medicare Act.

### (4) *Implied Preemption*

The foregoing analysis does not end our inquiry. The next question is whether plaintiffs' action is impliedly preempted by the Medicare Act.

Citing the CMS's own interpretation of the 2003 amendment to section 1395w-26(b)(3), plaintiffs argue "it appears that state tort laws of general applicability are not to be preempted" by the Medicare Act and the "allegations [of the first amended complaint] are actionable under [such] state tort laws . . . ." PacifiCare disagrees. It contends Congress's amendments to section 1395w-26(b) "expanded the scope of preemption until specifically enumerated categories were replaced with a broad preemption provision excepting . . . licensing and solvency," and thus the current provision " 'reach[es] beyond positive enactments . . . to embrace common-law duties.' "

■ Under implied conflict principles, " ' "state law is pre-empted to the extent that it actually conflicts with federal law," ' either because ' "it is impossible for a private party to comply with both state and federal requirements, [citation] or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " [Citations.]' [Citation.]" (*Williamson v. Mazda Motor of America, Inc.* (2008) 167 Cal.App.4th 905, 910 [84 Cal.Rptr.3d 545].) In this context, a court again " ' " "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress." ' [Citation.]" (*Dowhal v. SmithKline Beecham Consumer Healthcare, supra*, 32 Cal.4th at p. 923; see also *Bronco Wine Co. v.*

*Jolly* (2004) 33 Cal.4th 943, 958, fn. 12 [17 Cal.Rptr.3d 180, 95 P.3d 422] [rejecting claim "the presumption against preemption is categorically inapplicable in implied preemption cases . . ." where "the question is whether state law would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"].)

As noted, CMS's proposed rule for the Medicare Advantage plan concluded the 2003 amendment to section 1395w-26(b)(3) did not preempt "tort . . . and . . . contract law . . . generally . . . developed based on case law precedents established by courts . . . ." (69 Fed.Reg. 46866, 46914 (Aug. 3, 2004).) In subsequently approving the final rules implementing the MMA's amendments, CMS clarified its position in response to a comment about the rule's application to state case law specifically applicable "to health plans": "[A]ll State standards, including those established through case law, are preempted to the extent that they specifically would regulate MA plans, with exceptions of State licensing and solvency laws. Other State health and safety standards, or generally applicable standards, that do not involve regulation of an MA plan are not pree[mp]ted." (70 Fed.Reg. 4588, 4665 (Jan. 28, 2005); see also *Medical Card System v. Equipo Pro Convalecencia* (D.P.R. 2008) 587 F.Supp.2d 384, 387 [rejecting preemption claim in contract action between Medicare Advantage organizations and health care providers, because "federal law controls to the extent that federal standards exist; state common law prevails where neither Congress nor CMS has established standards"].)

■ Common law causes of action for negligence, willful misconduct, breach of fiduciary duty, and fraud apply in a broad spectrum of factual contexts. They are not limited to actions involving Medicare Advantage plans. Before the 2003 amendment to section 1395w-26(b)(3), case law had recognized generally applicable state common law actions were viable. While acknowledging the MMA broadened the scope of the Medicare Act's preemption, CMS concluded the exception for generally applicable state contract and tort law actions still exists. The only authority PacifiCare cites to support application of conflict preemption in this context is the opinion in *Uhm v. Humana, Inc.* (9th Cir. 2008) 540 F.3d 980. But the Ninth Circuit subsequently withdrew its prior opinion and directed it "shall not be cited as precedent." (*Uhm v. Humana, Inc.* (9th Cir. 2009) 573 F.3d 865.)

■ In determining what judicial deference should be accorded to a federal agency's construction of a statute, the Supreme Court has held "ask first whether 'the intent of Congress is clear' as to 'the precise question at issue.' [Citation.] If, by 'employing traditional tools of statutory construction,' [citation], we determine that Congress' intent is clear, 'that is the end of the matter,' [citation]. But 'if the statute is silent or ambiguous with respect to

the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.' [Citation.] If the agency's reading fills a gap or defines a term in a reasonable way in light of the Legislature's design, we give that reading controlling weight, even if it is not the answer 'the court would have reached if the question initially had arisen in a judicial proceeding.' [Citation.]" (*Regions Hospital v. Shalala* (1998) 522 U.S. 448, 457 [139 L.Ed.2d 895, 118 S.Ct. 909].) These principles apply here. Given the language of section 1395w-26(b)(3), CMS's construction of its application to state common law causes of action based on generally applicable standards is reasonable.

### (5) *Application*

PacifiCare further contends that, in any event, the causes of action alleged in the first amended complaint must fail because plaintiffs' "state law claims . . . are requests for coverage determinations and grievances concerning . . . Jackson's plan" and thus "subsumed by the Medicare Act's standards and regulations governing Plan determinations and procedures for resolving disputes . . . ." Plaintiffs respond that "PacifiCare's failure to authorize or provide care to [Jackson] did not stem from any activity or conduct for which standards exist under the Medicare Act . . . ." They explain "once in the care and custody of Starcare and Fountain Valley . . . , [Jackson] was entitled to all reasonably necessary medical care," Jackson's "plan with PacifiCare included these same services," but defendants declined to provide them "because of a contract dispute between StarCare[,] . . . Fountain Valley . . . [,] . . . and PacifiCare over the question who would pay for (or be 'at risk' for) his care." Thus, "[t]here is no grievance or coverage determination sought in this action."

■ We agree with PacifiCare only as to the seventh cause of action. As noted, in *Yarick v. PacifiCare of California, supra*, 179 Cal.App.4th 1158, the plaintiff sued PacifiCare for negligence, willful misconduct, elder abuse, and wrongful death, primarily based on the theory "the contractual structure through which [the defendant] arranges to provide medical services gives the medical care providers an undue financial incentive to deny medically reasonable services." (*Id.* at p. 1162.) After concluding section 1395w-26(b)(3) expressly preempted these claims because each one was based on the defendant's alleged breach of statutory duties imposed by the Knox-Keene Health Care Service Plan Act of 1975, the court rejected the plaintiff's alternative argument that "an independent common law duty provides a basis for viable state law claims against [the defendant]." (179 Cal.App.4th at p. 1167.)

*Yarick* noted CMS regulations "assure reasonable and timely access to medical services" and "provide a quality assurance program to prevent . . .

inappropriate medical decisions" (*Yarick v. PacifiCare of California, supra,* 179 Cal.App.4th at p. 1167), and concluded "[i]f state common law judgments were permitted to impose damages on the basis of these federally approved contracts and quality assurance programs, the federal authorities would lose control of the regulatory authority that is at the very core of Medicare generally and the MA program specifically . . . [citation]" (*id.* at pp. 1167–1168). Further, acknowledging "generally applicable common law actions" are not preempted by section 1395w-26(b)(3), *Yarick* concluded "in the present case, [the plaintiff] does not base her claims against [the defendant] on such common law duties. She asserts duties applicable specifically to health plans." (*Yarick v. PacifiCare of California, supra,* 179 Cal.App.4th at p. 1168.)

Here, the seventh count pleads constructive fraud. As to PacifiCare, plaintiffs allege its contractual agreements with StarCare and Fountain Valley "required them to enter into an agreement . . . shar[ing] in any savings by Fountain Valley in the cost of utilization of hospital services," and that "PacifiCare, by denying authorization for, or assuming the expense for [Jackson's] care and treatment at Fountain Valley" "save[d] substantial sums." In short, the gravamen of this cause of action is a physician incentive plan. CMS has issued a regulation governing the contents of such plans. (42 C.F.R. § 422.208 (2009).) Thus, we agree this cause of action is preempted by section 1395w-26(b)(3).

But otherwise this case is distinguishable from *Yarick.* The fifth cause of action for negligence-willful misconduct alleges PacifiCare knew that "[o]nce [Jackson] was accepted as a patient at Fountain Valley," "it was financially responsible for" Jackson's "out of . . . network . . . care[] unless . . . [StarCare] and Fountain Valley were responsible." But, "[n]otwithstanding the knowledge of the peril . . . and . . . the high probability of injury," because of defendants' "disagreement regarding financial responsibility," each "failed to avoid the peril[] for the sake of profit and minimizing . . . financial risk." Given the life-threatening situation presented, defendants' conflict over who was financially responsible for Jackson's care could not have been remedied by CMS's administrative review process.

The sixth cause of action for breach of fiduciary duty alleged PacifiCare "acted as [a] health care provider[]" for Jackson and thus owed him a fiduciary obligation concerning "the decision to cover the cost of 'out of network' care" for him. But because it was "influenced by adverse financial interests," PacifiCare "refused to authorize payment for services on and after

January 31, 2007." Since PacifiCare allegedly made this determination with full knowledge Jackson would not be treated, this claim may also be proven without consideration of coverage determinations under CMS's standards.

The eighth cause of action for bad faith alleges PacifiCare "acted as an insurer" for Jackson and it breached its "duty of good faith . . . by unreasonably denying coverage for [his] medical care" "solely . . . to save the cost of providing such care." Since the duty to act in good faith and to deal fairly with another contracting party is a generally applicable common law duty, it is not specifically targeted by the Medicare Act's regulations for Medicare Advantage organizations.

In the ninth count, plaintiffs allege PacifiCare committed fraud by "fail[ing] to disclose to [Jackson] and his family that [Jackson] was not [receiving] and would not receive necessary . . . care because" it did not want to "subject [itself] to liability or financial risk for the cost of his care," while Jackson and plaintiffs reasonably relied "on statements and silence" to "believe[] that the care [Jackson] was receiving . . . was adequate and suitable to meet his reasonable health care [needs] . . . ." This cause of action, too, is premised on general common law tort principles and not directly aimed at medical care plans governed by the Medicare Act. As for the 10th cause of action alleging a claim for wrongful death, the same analysis applies.

### d. Exhaustion of Administrative Remedies

The trial court sustained PacifiCare's demurrer solely on the basis of federal preemption. As an alternative basis for affirming the judgments, PacifiCare argues plaintiffs' failure to exhaust the administrative remedies provided under the Medicare Act bars the current action.

As discussed above, and contrary to PacifiCare's characterization of the case, plaintiffs are not disputing an adverse determination concerning Medicare benefits. Thus, this case is governed by *McCall v. PacifiCare of Cal., Inc., supra*, 25 Cal.4th 412, which, as discussed, rejected a failure to exhaust administrative remedies claim made under the Medicare Act "[b]ecause the [plaintiffs] may be able to prove the elements of some or all of their causes of action without regard, or only incidentally, to Medicare coverage determinations" where "none of their causes of action seeks, at bottom, payment or reimbursement of a Medicare claim or falls within the Medicare administrative review process, and because the harm they allegedly suffered thus is not remediable within that process . . . ." (25 Cal.4th at p. 426, fn. omitted.) This case presents an even stronger basis for rejecting the failure to exhaust administrative remedies defense.

## DISPOSITION

In case No. G040920, the judgment is reversed with directions to permit appellants to file an amended complaint against respondent StarCare. In case No. G041809, the judgment is affirmed as to the first amended complaint's seventh cause of action, but reversed as to the fifth, sixth, eighth, ninth, and 10th causes of action. Appellants shall recover their costs on appeal.

Fybel, J., and Ikola, J., concurred.

A petition for a rehearing was denied April 20, 2010, and the petition of respondent PacifiCare of California, Inc., for review by the Supreme Court was denied June 23, 2010, S182565.