Filed 8/4/16  Benson v. MEK Escondido CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| EDNA BENSON et al., | D068201 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2014-00034206-CU-PO-NC) |
| MEK ESCONDIDO LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Reversed and remanded with directions.

Moran Law and Michael F. Moran, Alexander Harrison Feldman for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith and Kathleen Marie Walker, Lann G. McIntyre, Brittany H. Bartold for Defendant and Respondent.

Appellant Peter Benson, as successor in interest of his deceased mother, Edna Benson (Benson), appeals a judgment of dismissal following the trial court's order sustaining without leave to amend the demurrer of respondent Mek Escondido, LLC,

doing business as Escondido Care Center (sometimes "the facility") to appellant's causes of action for (1) violation of the Elder Abuse Act (Welf. & Inst. Code, § 15600 et seq.), (2) violation of Health and Safety Code section 1430, subdivision (b) (Patients' Bill of Rights), (3) willful misconduct, and (4) wrongful death, and sustaining with leave to amend appellant's fifth cause of action for negligence.  Appellant contends the court abused its discretion by sustaining the demurrer without leave to amend his complaint to show that after Benson fell at the facility, she became insane within the meaning of Code of Civil Procedure section 352;[1] triggering its tolling provisions.  Appellant further contends he could state a cause of action for wrongful death based on the cause of death stated in the autopsy report.  Appellant did not file a motion to amend, but rather a motion for reconsideration, which he contends the court erroneously denied.  We conclude that although the court did not err by sustaining the demurrer, it erroneously failed to grant appellant's motion for reconsideration and leave to amend all the causes of action; accordingly, we reverse and remand with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

We state the background by accepting "as true all material allegations of the complaint" (*Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 929), and take judicial notice of documents attached to it.  (Evid. Code, § 459.)  On October 8, 2014, appellant sued Escondido Care Center, which appellant stated is a "facility specializing in long term care for the elderly."  In December 2014, appellant filed the operative first

---

1      Statutory references are to the Code of Civil Procedure unless otherwise stated.

amended complaint, alleging that after Benson had suffered a stroke leaving her partially paralyzed and unable to walk properly, 85-year old Benson resided at the facility from May 11, 2012, until September 18, 2012. Appellant alleged that in May 2012, the facility created a fall care plan to address Benson's fall risk; however, Benson fell five times while a resident there. After Benson's first fall, the facility did not notify Benson's physician, thus depriving Benson of safety interventions. The facility also failed to review and revise Benson's plan of care regarding fall prevention. Benson's fall was not mentioned in the licensed nurse's notes; therefore, the "health and safety threat she faced was not communicated or endorsed to the oncoming staff during the shift change." Following Benson's second fall, her physician recommended a tab alarm, and an interdisciplinary team discussed with her son the use of a skid mat, full-length side rails on the bed, and a lowered bed position for Benson. However, the facility never implemented those measures.

Appellant alleged that Benson's third fall occurred when she was trying to transfer from her wheelchair to her bed. Again, the facility failed to record the fall in the licensed nurse's notes, communicate the incident to the oncoming staff during the shift change, or revise Benson's fall prevention plan. Appellant alleged that Benson's fourth fall occurred after she "was abandoned in her wheelchair and was left alone in a hallway. She needed a diaper change but was unable to obtain assistance from the staff. [She] got up from her wheelchair and walked in the direction of the nurse's station to obtain assistance. . . . [U]sing the wooden railing for support, she lost her balance, causing her to fall and hit her head."

3

Appellant alleged that Benson's fifth fall happened two days later, on September 12, 2012, when she "wanted to make a phone call but was unable to call for assistance because her call light was broken. Benson attempted to reach over to where her phone was located, and as she strained to grasp the phone, the unlocked wheels on the bed moved, and she fell out of bed, striking her head on the metal bed frame." She suffered a bump on her right occipital lobe and a tear on her back. Nearly a year later, her son found out through discovery of Benson's medical records that, when she fell, the side rails of her bed were not raised.

Appellant alleged that following her last fall, Benson experienced dizziness and irregular vital signs; therefore, on September 18, 2012, Benson was taken to a hospital emergency room where doctors diagnosed her with a subdural hematoma, dehydration and bedsores. Afterwards, Benson no longer resided at the facility. Appellant alleged that Benson's "traumatic brain injury caused by her September [2012] fall rendered her permanently incompetent. She suffered from severe cognitive impairment and incompetency until her death on July 15, 2013. [¶] Following the development of the subdural hematoma, Ms. Benson lost the ability to speak and suffered a functional decline in many of her [activities of daily living]. Her health declined dramatically following her brain injury. She was hospitalized numerous times and never regained her prior level of function."[2]

---

[2]    Without specifying a date, appellant also alleged that "[p]rior to the acute onset of her brain bleed, [Benson] had regained the ability to eat independently, play the piano, and ambulate with the assistance of a walker. She was even able to play catch with a

4

The first amended complaint lists other instances of the facility's failures "to perform many other of the custodial duties owed to Ms. Benson"; specifically, on several days the facility failed to provide Benson her meals, and routinely ignored her calls for help. Benson became dehydrated because the facility failed to provide her the recommended amount of fluids. Further, she sometimes was left with soiled adult diapers for up to an hour; she was often forced to wear the same clothing several days in a row, and that lack of hygiene caused her to develop sores on her buttocks. The family hired outside caregivers because the facility did not employ sufficient staff to meet Benson's needs. Appellant alleged the facility's staff physically and verbally abused Benson at different times. Specifically, one certified nurse's assistant threw a shoe at Benson; another one threw a bed cover over Benson after she had requested an adult diaper change; and a third one threw Benson onto the bed after changing Benson's adult diaper.

Escondido Care Center demurred to the first amended complaint and moved to strike it, arguing that all of Benson's causes of action, except that for negligence, failed to allege facts sufficient to state causes of action. It also argued that all causes of action, except that for wrongful death, were time-barred. It argued that appellant had failed to state a cause of action for elder abuse because the facility's allegedly wrongful acts appeared to be encompassed by the negligence claim. Moreover, Escondido Care Center argued that appellant had failed to satisfy the Elder Abuse Act's requirement of showing

football during her occupational therapy sessions. [She] had also built up enough strength to wheel herself in a wheelchair."

involvement by an officer, director, or managing agent of the corporate defendant. (Welf. & Inst. Code, § 15657, subd. (c).) Escondido Care Center denied violating Health and Safety Code section 1430, subdivision (b), contending that no facts showed the California Department of Public Health (department) had taken action on a complaint and the facility had not corrected the violation. Escondido Care Center argued that appellant had not stated facts showing the facility's actions were reckless, oppressive, fraudulent or malicious to constitute willful misconduct. It argued as to the wrongful death cause of action that Benson's death certificate, which had the benefit of a statutory presumption of correctness (Health & Saf. Code, §103550), stated that Benson's immediate cause of death was acute respiratory failure with underlying causes of aspiration pneumonia and cerebral vascular accident; therefore, appellant had not alleged sufficient facts showing that Benson's death was caused by the subdural hematoma she had suffered ten months earlier.

Appellant argued in opposition that the first amended complaint's allegations sufficed to state causes of action for elder abuse, neglect, and willful misconduct. Appellant also argued that the two-year statute of limitations set forth in section 335.1 applied to the elder abuse and willful misconduct causes of action; therefore, these causes of action did not accrue until Benson had died in July 2013. Appellant further argued that section 364, subdivision (d), entitled him to a 90-day extension from the date of death to commence the lawsuit; thus, the statute of limitations did not run until October 13, 2014. Based on the statutory definition of insanity set forth in section 352,

6

subdivision (a), appellant argued the negligence cause of action was tolled for one year; accordingly, the complaint filed on October 8, 2013, was timely.

The court ruled that the elder abuse and willful misconduct causes of action were barred by the two-year statute of limitations set forth in section 335.1 because Benson's injuries were diagnosed by September 18, 2012, but the complaint was not filed until October 8, 2014. Accordingly, the court sustained the demurrer as to these causes of action without leave to amend. The court sustained the demurrer with leave to amend as to the negligence cause of action, granting appellant an opportunity to allege that under section 352, Benson's insanity had tolled the statute of limitations. The court sustained without leave to amend the cause of action alleging a violation of the Patients' Bill of Rights, concluding that appellant had failed to allege facts showing that under Health & Safety Code section 1430, subdivision (a), department had issued a particular citation to the facility, which did not correct the violation. The court sustained the demurrer as to the wrongful death cause of action because despite the complaint alleging that Benson had died from subdural hematoma, dehydration and bedsores, the death certificate did not list any of these conditions as a cause of death or a contributing factor. The court denied as moot Escondido Care Center's motion to strike the first amended complaint.

Appellant filed an ex parte application for reconsideration of the court's ruling on the demurrer under section 1008, submitting a proposed second amended complaint. Escondido Care Center opposed the application. Following a hearing, the court denied the application, reasoning that appellant had not satisfactorily explained his failure to earlier obtain the new or different facts set forth in the proposed second amended

7

complaint. The court subsequently granted appellant's motion to dismiss the first amended complaint.

DISCUSSION

I. *Standard of Review*

A demurrer may be sustained on statute of limitations grounds if the time bar " ' " 'clearly and affirmatively appear[s] on the face of the complaint.' " ' " (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1232, quoting *Committee for Green Foothills v. Santa Clara Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; § 430.30, subd. (a) ["[w]hen any ground for objection to a complaint . . . appears on the face thereof, . . . the objection on that ground may be taken by a demurrer to the pleading"].) We must accept as true all "well-pleaded facts" in the complaint, but need not accept allegations containing "legal conclusions," "adjectival descriptions" or "unsupported speculation." (*Ellis v. County of Calaveras* (2016) 245 Cal.App.4th 64, 70; *Chicago Title Ins. Co. v. Western Financial Corp.* (1968) 69 Cal.2d 305, 327.) Because "[t]he application of the statute of limitations on undisputed facts is a purely legal question," our review is de novo. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.) Further, because we are reviewing the trial court's ruling and not its reasoning, we may affirm on any ground supported by the record regardless of whether the trial court relied upon it. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 201.) In deciding whether a plaintiff whose complaint is barred should be granted further leave to amend, we ask "whether there is a reasonable possibility that the defect can be cured by amendment"; if so, the trial court

8

has abused its discretion in denying leave to amend and we must reverse. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

"Under *Rains v. Superior Court* (1984) 150 Cal.App.3d 933, 943-944 . . . , plaintiffs were entitled to submit proposed second amended complaints by way of a motion for reconsideration. If those second amended complaints stated any causes of action, then the trial court was obligated to (1) vacate its order which sustained the demurrers without leave to amend and (2) make a different order granting plaintiffs leave to file an amended complaint which would include the causes of action which the trial court, in deciding the merits of the motion for reconsideration, determined were valid." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1387.)

" 'When a demurrer is sustained without leave to amend the petitioner may advance on appeal a new legal theory why the allegations of the petition state a cause of action.' [Citation.] This is so because of the general rule that ' "a litigant may raise for the first time on appeal a pure question of law which is presented by undisputed facts." ' " (*Dudley v. Department of Transp.* (2001) 90 Cal.App.4th 255, 259; see also *Graham v. Bank of American, N.A.* (2014) 226 Cal.App.4th 594, 610.)

1. *Applicable Law*

As pertinent here, a statute of limitations gives someone who has suffered a civil wrong a certain period of time to sue for damages. (*Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1341; §§ 312, 350.) The Legislature fixes the time period, and that period is designed to strike a balance between the interest in giving a plaintiff

9

sufficient time to sue against the interests in " 'promot[ing] the diligent assertion of [the] claim[], ensur[ing] defendants the opportunity to collect evidence while still fresh, and provid[ing] repose and protection from dilatory suits once excess time has passed.' " (*Gilkyson,* at p. 1341, quoting *Aryeh v. Canon Business Solutions, Inc., supra,* 55 Cal.4th at p. 1191.)  The time period starts to run once the cause of action "accrues."  (*Gilkyson,* at p. 1341.)  Although a cause of action typically "accrues 'when [it] is complete with all of its elements' " (*Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 797), a cause of action will at times be deemed to accrue at a later date.  (*Aryeh,* at p. 1192.)

Although statutes of limitations in general serve to prevent the assertion of stale claims that would be difficult to defend because of the passage of time, such technical defenses "should be strictly construed to avoid the forfeiture of a person's rights." (*Donnellan v. City of Novato* (2001) 86 Cal.App.4th 1097, 1103; see *Herman v. Los Angeles County Metropolitan Transportation Authority* (1999) 71 Cal.App.4th 819, 826-827.)  "The two public policies identified above—the one for repose and the other for disposition on the merits—are equally strong, the one being no less important or substantial than the other."  (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 396.)  "To establish any particular limitations period under any particular statute of limitations entails the striking of a balance between the two.  To establish any such period under any such statute belongs to the Legislature alone [citation], subject only to constitutional constraints."  (*Id.* at pp. 396-397.)

This result comports with our strong policies favoring liberal amendment of pleadings, disposition of cases on their substantial merits, and resolution of all disputed

10

matters between the parties in the same lawsuit. (See, e.g., *Douglas v. Superior Court* (1989) 215 Cal.App.3d 155, 158 ["California courts have 'a policy of great liberality in allowing amendments at any stage of the proceeding so as to dispose of cases upon their substantial merits where the authorization does not prejudice the substantial rights of others' "]; *Morgan v. Superior Court of Los Angeles County* (1959) 172 Cal.App.2d 527, 530 ["[I]t is a rare case in which 'a court will be justified in refusing a party leave to amend his pleading so that he may properly present his case' "].)

## II. *The Elder Abuse Cause of Action*

### *A.*

Appellant contends the court abused its discretion by denying him leave to amend the elder abuse cause of action to allege that the statute of limitations for commencing a legal action was tolled under section 352.

We conclude the court erred by not granting appellant's motion for reconsideration. In appellant's proposed second amended complaint, he alleged these facts for tolling the statute of limitations for Benson's insanity under section 352: "Ms. Benson's traumatic brain injuries left her incompetent, without basic physical or cognitive skills. She was disoriented and did not have the cognitive ability to comprehend what was occurring around her or to make decisions regarding her health or financial affairs. She was not able to communicate verbally or care for herself. She required total assistance to complete activities of daily living to include eating, dressing, bathing, and transferring to and from bed. Ms. Benson was incapable of caring for her property or transacting her business affairs or understanding the nature of her acts. After Ms. Benson

11

sustained her brain injuries following her fall and head-strike at Defendant's facility, her son, Peter Benson, became responsible for her healthcare, legal, and financial decisions. Ms. Benson's cognitive impairment and inability to care for her property or take steps to protect her own legal or medical needs remained unchanged until her death on July 15, 2013." (Some capitalization omitted.)

The statute of limitations applicable to elder abuse is two years from the date the injury was discovered. (§ 335.1; *Benun v. Superior Court* (2004) 123 Cal.App.4th 113, 125-127.) When, as here, the plaintiff also brings a cause of action for negligence, section 335.1 is extended by the required 90-day notice of intent to sue a health care provider. (§ 364, subd. (a).) Further, the time for filing a complaint is tolled when a patient suffers from insanity. (§ 352; *Benun*, at p. 126.) Section 352's tolling provision reads in part: "(a) If a person entitled to bring an action . . . is, at the time the cause of action accrued either under the age of majority or insane, the time of the disability is not part of the time limited for the commencement of the action." For purposes of section 352, a plaintiff is "insane" if "incapable of caring for his [or her] property or transacting business or understanding the nature or effects of his [or her] acts." (*Alcott Rehabilitation Hospital v. Superior Court* (2001) 93 Cal.App.4th 94, 102.)

As set forth in detail above, appellant alleges Benson was diagnosed with a subdural hematoma on September 18, 2012, and shortly thereafter, and until her death in July 2013, she suffered from specific impairments that met the standards for insanity within the meaning of section 352. Therefore, the statute of limitations was tolled until after her date of death. Section 364 additionally extended the statute of limitations by 90

12

days. Based upon these allegations, it therefore appears that appellant's complaint filed in October 2014 was timely and not barred by the statute of limitations. We conclude these allegations sufficed to show the complaint can be so amended; therefore, appellant should be granted leave to do so.

B.

Respondent contends appellant did not allege facts sufficient to make out an elder abuse cause of action because the facility's conduct was not shown to be reckless; rather, at most it was negligent. We disagree.

1. *Applicable Law*

The Elder Abuse Act makes certain enhanced remedies available to a plaintiff who proves abuse of an elder, i.e., a "person residing in this state, 65 years of age or older." (Welf. & Inst. Code, § 15610.27.) In particular, a plaintiff who proves "by clear and convincing evidence" both that a defendant is liable for physical abuse, neglect or financial abuse (as these terms are statutorily defined) and that the defendant is guilty of "recklessness, oppression, fraud, or malice" in the commission of such abuse may recover attorney fees and costs. (Welf. & Inst. Code, § 15657, subd. (a).) On the same proof, a plaintiff who sues as the personal representative or successor in interest of a deceased elder is partially relieved of the limitation on damages imposed by Code of Civil Procedure section 377.34 and may recover damages for the decedent's predeath pain and suffering. (Welf. & Inst. Code, § 15657, subd. (b).)

As applicable here, the Elder Abuse Act defines abuse as "[p]hysical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with

13

resulting physical harm or pain or mental suffering" (Welf. & Inst. Code, § 15610.07, subd. (a)); or "[t]he deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering" (*id.,* § 15610.07, subd. (b)). The statute defines neglect as "[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise." (*Id.,* § 15610.57, subd. (a)(1).) "Neglect includes, but is not limited to, all of the following: [¶] (1) Failure to assist in personal hygiene, or in the provision of food, clothing, or shelter. [¶] (2) Failure to provide medical care for physical and mental health needs. . . . [¶] (3) Failure to protect from health and safety hazards. [¶] (4) Failure to prevent malnutrition or dehydration." (*Id*., § 15610.57, subd. (b).) In short, neglect as a form of abuse under the Elder Abuse Act refers "to the failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations." (*Delaney v. Baker* (1999) 20 Cal.4th 23, 34.) Thus, when the medical care of an elder is at issue, "the statutory definition of 'neglect' speaks not of the *undertaking* of medical services, but of the failure to *provide* medical care." (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 783; see also *id.* at p. 786 ["statutory elder abuse may include the egregious withholding of medical care for physical and mental health needs"].)

To recover the enhanced remedies available under the Elder Abuse Act from a health care provider, a plaintiff must prove more than simple or even gross negligence in the provider's care or custody of the elder. (Welf. & Inst. Code, § 15657.2; *Delaney v.*

14

*Baker, supra,* 20 Cal.4th at p. 32; *Sababin v. Superior Court* (2006) 144 Cal.App.4th 81, 88.) The plaintiff must prove "by clear and convincing evidence" that "the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of" the neglect. (Welf. & Inst. Code, § 15657.) Oppression, fraud and malice "involve 'intentional,' 'willful,' or 'conscious' wrongdoing of a 'despicable' or 'injurious' nature." (*Delaney,* at p. 31.) Recklessness involves " 'deliberate disregard' of the 'high degree of probability' that an injury will occur" and "rises to the level of a 'conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it.' " (*Id.* at pp. 31-32.) Thus, the enhanced remedies are available only for " 'acts of egregious abuse' against elder and dependent adults." (*Id.* at p. 35; see also *Covenant Care, Inc. v. Superior Court, supra,* 32 Cal.4th at p. 786 ["statutory elder abuse may include the egregious withholding of medical care for physical and mental health needs"].) In short, "[i]n order to obtain the [Elder Abuse] Act's heightened remedies, a plaintiff must allege conduct essentially equivalent to conduct that would support recovery of punitive damages." (*Covenant Care,* at p. 789.)

For example, in *Sababin*, the summary adjudication standard was met where a facility caring for a dependent adult with a known condition causing progressive dementia, requiring nutrition and hydration through a gastrostomy tube, and subjecting her to skin deterioration, ignored a medical care plan requiring the facility to check the dependent adult's skin on a daily basis and failed to notify a physician when pressure ulcers and other skin lesions developed. (*Sababin v. Superior Court, supra,* 144 Cal.App.4th at pp. 83-87, 90.)

15

2. *Analysis*

In light of the case law cited above, we conclude that appellant's proposed second amended complaint alleges various facts to state a cause of action for elder abuse. Specifically, the facility's staff allegedly (1) denied Benson nourishment, causing her to suffer dehydration; (2) failed to follow a fall prevention plan for Benson; (3) failed to provide Benson proper hygiene, thus causing her to suffer sores on her buttocks, and (4) failed to properly document Benson's falls and injuries, thus preventing others from helping her.

C.

Escondido Care Center contends appellant has not shown he can make out a cause of action for elder abuse because he failed to allege that respondent's agents authorized or ratified the acts constituting reckless neglect.

A "managing agent" is someone "who exercise[s] substantial independent authority and judgment over decisions that ultimately determine corporate policy." (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 573.) " '[C]orporate policy' is the general principles which guide a corporation, or rules intended to be followed consistently over time in corporate operations. A 'managing agent' is one with substantial authority over decisions that set these general principles and rules." (*Cruz v. HomeBase* (2000) 83 Cal.App.4th at 160, 167-168.) To demonstrate an employee is a managing agent, the plaintiff must show that he or she "exercised substantial discretionary authority over significant aspects of a corporation's business." (*White v. Ultramar, Inc.*, at p. 577.)

"The scope of a corporate employee's discretion and authority . . . is therefore a question of fact for decision on a case-by-case basis." (*Id.* at p. 567.)

Appellant alleged in the proposed second amended complaint that the facility's director of nursing was solely responsible for the total management of the nursing and "for ensuring compliance with local, state and federal regulations . . . which required the [director of nursing] to review, evaluate, and update Ms. Benson's fall plan of care as necessary to manage her fall risk. Despite having knowledge of this regulatory duty and obligation, the [director of nursing] chose to disregard the regulation, which was specifically designed to protect residents like Ms. Benson from health and safety hazards in the nursing home setting." (Some capitalization omitted.)

We conclude that in light of the fact we are remanding this matter for the trial court to grant appellant leave to amend his complaint regarding the statute of limitations issue, appellant may well decide to amend this aspect of his complaint as well. Therefore, we need not decide whether the above allegations suffice to show that the director of nursing was one of respondent's principals who ratified the facility's alleged elder abuse of Benson.

III. *The Willful Misconduct Cause of Action*

A.

Respondent contends appellant did not allege facts sufficient to make out a cause of action for wrongful misconduct. In *Berkley v. Dowds* (2007) 152 Cal.App.4th 518, the court discussed the pleading requirements of a claim for "willful misconduct," noting that

17

"[t]he parties have argued extensively about whether a tort called 'willful misconduct' is recognized in California. It is not a separate tort, but simply ' " 'an aggravated form of negligence, differing in quality rather than degree from ordinary lack of care' [citations]." ' [Citation.] Its pleading requirements are similar to negligence but stricter." (*Id.* at p. 526.)

Willful misconduct is the "intentional doing of something either with knowledge, express or implied, that serious injury is a probable, as distinguished from a possible, result, or the intentional doing of an act with a wanton and reckless disregard of its consequences." (*Williams v. Carr* (1968) 68 Cal.2d 579, 584.) Three elements must be present to raise a negligent act to the level of willful misconduct: " '(1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril.' " (*Bains v. Western Pacific R.R. Co.* (1976) 56 Cal.App.3d 902, 905.)

We conclude that the allegations set forth in appellant's proposed second amended complaint suffice to state a cause of action for reckless misconduct. We need not exhaustively recount the allegations; rather, we need only cite to some of the acts allegedly undertaken by the facilities' certified nursing assistants, including throwing a shoe at Benson, and throwing her on the bed. Based on those allegations, the facility's staff would actually or constructively know that such conduct would put Benson in peril, and their conscious failure to act to avoid the peril would constitute reckless conduct.

18

B.

Further, applying the same analysis above regarding the statute of limitations, we conclude the court should have granted appellant's motion for reconsideration, and given him leave to amend the complaint to show that under section 352, Benson suffered insanity as of her last fall in September 2012, until her death in July 2013; thus, section 335.1's two-year statute of limitations for appellant to bring a willful misconduct cause of action was tolled. Further, he may allege that section 364 would extend by 90 days the time for commencement of the lawsuit.

IV. *The Negligence Cause of Action*

The negligence cause of action turns on the same issue regarding the tolling of the statute of limitations under section 352, therefore resolution of this issue is the same as that set forth above regarding the elder abuse and willful misconduct causes of action. The negligence cause of action is in a different procedural posture than the elder abuse or wrongful misconduct causes of action because the court had granted appellant leave to amend the complaint to state a negligence cause of action, but appellant did not do so, instead moving for reconsideration of the court's ruling on the demurrer, and submitting a proposed second amended complaint.

On similar facts, an appellate court stated: "Although it does not appear from the record before us that the trial court specifically considered the changes made by the plaintiffs in their proposed second amended complaints before denying the motion to reconsider, we do not believe it to be in the interest of judicial economy to return the case to the trial court for such a review. We have the second amended pleadings before us,

19

and we can make a determination as to whether any viable causes of action are stated and, if not, whether further amendment should be permitted." (*Careau & Co. v. Security Pacific Business Credit, Inc., supra*, 222 Cal.App.3d at p. 1387, fn. omitted.)

When, as here, a demurrer to a complaint is sustained with leave to amend and the plaintiff declines to amend the complaint, the plaintiff may challenge the trial court's ruling on appeal from the subsequent dismissal of the action. (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1372.) On appeal, we assume the complaint contained the strongest statement of the plaintiff's cause or causes of action. (*Ibid.*) Thus, unlike when a demurrer is sustained without leave to amend, we determine only whether the plaintiff stated a cause of action, and not whether the plaintiff might be able to do so. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091, abrogated on another ground in *Martinez v. Combs* (2010) 49 Cal.4th 35, 62-66.)

Following our independent review of the allegations in appellant's proposed second amended complaint, we conclude that appellant has alleged sufficient facts to state that Benson's alleged injuries caused her to suffer insanity within the meaning of section 352. The statute of limitations for a negligence cause of action is one year. (§ 340.5; *Artell v. Allen* (2003) 111 Cal.App.4th 273, 278.) As noted, Benson died in July, 2013, and under section 364 her successor in interest had an additional 90 days to file a negligence action. Appellant alleged that following her last fall, Benson suffered cognitive impairment, rendering her incapable of taking care of her affairs; therefore, her

son was appointed to handle her healthcare, legal and financial decisions. Based on those allegations, appellant should be given leave to amend the complaint.

V. *The Patients' Bill of Rights Cause of Action*

Appellant alleged Escondido Care Center violated Health and Safety Code section 1430, subdivision (b), which provides, in relevant part: "A current or former resident or patient of a skilled nursing facility . . . may bring a civil action against the licensee of a facility who violates any rights of the resident or patient as set forth in the Patients' Bill of Rights in Section 72527 of Title 22 of the California Code of Regulations, or any other right provided for by federal or state law or regulation." Health and Safety Code section 1430, subdivision (b) is also a remedial statute, which must therefore be "liberally construed on behalf of the class of persons it is designed to protect." (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 295.) Those individuals are nursing care patients, "one of the most vulnerable segments of our population." (*Ibid.*)

Here the duties imposed by the regulations that Escondido Care Center allegedly violated directly affect the patient's right to proper diagnosis, treatment and care. "Failure to maintain complete health care records may lead to serious health and treatment consequences. These regulations set standards for the conduct of the facilities. But they were enacted to protect the patients who are the intended beneficiaries of regulatory compliance. [Citation.] California regulations give the nursing care patient *the right* to participate 'in the total plan of care.' (Cal. Code Regs., tit. 22, § 72527, subd. (a)(3) (Patients['] Bill of Rights).) But such a right and plan of care cannot be implemented

21

where the facility does not maintain proper medical records.  Consequently, the regulations involved in this action implement the statutory duty to ensure 'quality health care' by requiring adequate health care records for patients." (*Lemaire v. Covenant Care California, LLC* (2015) 234 Cal.App.4th 860, 865-866.)

Here, appellant alleged the facility did not maintain adequate medical records of Benson's falls, thus preventing medical staff from providing her adequate treatment or forestalling subsequent falls.  California regulations give the nursing care patient the right to participate "in the total plan of care."  (Cal. Code Regs., tit. 22, § 72527, subd. (a)(3).)  But such a right and plan of care cannot be implemented where the facility does not maintain proper medical records.  Consequently, the regulations involved in this action implement the statutory duty to ensure "quality health care" by requiring adequate health care records for patients.  (*Kizer v. County of San Mateo* (2000) 53 Cal.3d 139, 148; Health & Saf. Code, §§ 1422, subd. (a), 1427, subd. (a).)  We therefore conclude the court erred by denying appellant's motion for reconsideration, and he should be granted leave to amend his complaint.

By contrast, the trial court relied on a different provision of the statute, which was inapposite; specifically, Health and Safety Code section 1430, subdivision (a), which states:  "Except where the state department has taken action and the violations have been corrected to its satisfaction, a licensee who commits a class 'A' or 'B' violation may be enjoined from permitting the violation to continue or may be sued for civil damages within a court of competent jurisdiction.  An action for injunction or civil damages, or both, may be prosecuted by the Attorney General in the name of the people of the State of

22

California upon his or her own complaint or upon the complaint of a board, officer, person, corporation, or association, or by a person acting for the interests of itself, its members, or the general public. The amount of civil damages that may be recovered in an action brought pursuant to this section may not exceed the maximum amount of civil penalties that could be assessed on account of the violation or violations." Because appellant did not sue under this provision, it follows he was not required to plead facts—regarding the facility's alleged violation of licensing requirements—to satisfy it.

VI. *The Wrongful Death Cause of Action*

The court did not err by sustaining the demurrer as to the wrongful death cause of action because it properly relied on the presumption that the certificate of death attached to the complaint is "prima facie evidence" of the "facts stated therein." (Health & Saf. Code, § 103550.) Nevertheless, we again conclude the court erred by not granting appellant's motion for reconsideration and leave to amend the complaint regarding the wrongful death cause of action.

Appellant's proposed second amended complaint incorporates an allegation that Benson's autopsy report stating that her subdural hematoma was a contributing cause of Benson's death. We conclude that this factual allegation suffices for appellant to be given an opportunity to amend the complaint to try to overcome the statutory presumption contained in Health and Safety Code section 103550 regarding the correctness of the autopsy report. Two cases applying the predecessor statute, Health and Safety Code section 10577, which is substantially the same as the present statute, support our conclusion. (*Morris v. Noguchi* (1983) 141 Cal.App.3d 520, 523, fn. 1 [pointing out that

23

a death certificate constitutes only prima facie evidence of the facts stated therein, but that it is "subject to rebuttal and to explanation"]; *Bohrer v. San Diego* (1980) 104 Cal.App.3d 155, 164 ["If California Health and Safety Code section 10577 expressly provides for admissibility of the California record as prima facie evidence of the 'cause of death,' the trial court misapplied this provision to effectively utilize the conclusion of suicide as a conclusive presumption which the plaintiff could not further dispute"].)

DISPOSITION

The judgment is reversed, the matter is remanded and the trial court is directed to vacate its order sustaining the demurrer of Escondido Care Center without leave to amend and to enter a new order overruling the demurrer and granting leave to amend, consistent with this opinion. Appellant Peter Benson is awarded costs on appeal.


O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


NARES, J.