[No. B174606. Second Dist., Div. Four. Oct. 5, 2004.]

SAM BENUN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
COUNTRY VILLA EAST, L.P., et al., Real Parties in Interest.

C<small>OUNSEL</small>

Berglund, Johnson & Sommer, Jerrie S. Weiss and Andrina G. Hanson for Petitioners.

No appearance for Respondent.

Morris, Polich & Purdy, David L. Brandon, Marc S. Katz, Richard H. Nakamura, Jr., Bryan Carney and Pamela A. Mixon for Real Parties in Interest Country Villa East, L.P., doing business as Country Villa Terrace Nursing Center, Eldon Teper, Reissman Family Trust, Joel Saltzburg, Edie Rowles, John Libby, Rachel C. Bennett, Anthony Pham and Country Villa Services Corp., doing business as Country Villa Health Services.

Fonda & Fraser, Peter M. Fonda and Cecille L. Hester for Real Party in Interest Payman Khorrami.

O<small>PINION</small>

**CURRY, J.—**

### INTRODUCTION

Plaintiffs seek review of superior court orders, which granted partial judgment on the pleadings as to their statutory cause of action for custodial elder abuse (Welf. & Inst. Code, § 15600 et seq.) by health care providers and

others (a long-term nursing home and its administrator, staff and management company, and a physician) on the ground the cause is time-barred by the Code of Civil Procedure section 340.5 three-year statute of limitations.[1] Plaintiffs contend that section 340.5—the statute of limitations for actions for injury or death against health care providers based upon professional negligence—is not the applicable statute of limitations in actions for elder abuse. We agree and therefore grant the petition for writ of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

The material allegations set forth in the operative complaint are that defendants (Country Villa East. L.P., doing business as Country Villa Terrace Nursing Center, Eldon Teper, Reissman Family Trust, Joel Saltzburg, Eddie Rowles, John Libby, Rachel C. Bennett, Terri Sweeny, Machelle Thompson, Karen Clama, R.N., and Payman Khorrami, M.D., hereafter collectively referred to as defendants) committed elder abuse by recklessly or intentionally neglecting to provide adequate custodial care to the decedent (plaintiffs' mother, Fortune Benun, born July 9, 1907) from the time she was admitted in March 1998 until she was finally discharged on December 24, 2001, days before her death. The elder was admitted to defendants' facility seven separate times during this period. From the time of her admission, the elder suffered from blindness, dementia, and Alzheimer's disease and was unable to care for herself or understand what was happening to her, or take steps to protect her own legal or medical needs. As such, plaintiffs allege the elder was insane during the period of alleged custodial abuse commencing in March 1998, within the meaning of Code of Civil Procedure section 352, and therefore its tolling provisions apply. The acts of elder abuse and neglect included failure to assist the elder in personal hygiene; failure to provide adequate food, water, clothing, and shelter; failure to provide medical care for the elder's physical and mental health needs; failure to protect the elder from health and safety hazards; failure to protect the elder from suffering and malnutrition; failure to assist her with eating, as her condition required; willful forsaking of reasonable custodial care; use of unreasonable physical and chemical restraints and psychotropic medications, without the required consent, for the purpose of punishing the elder and preventing her from obtaining help; failure to implement physicians' orders and medication prescriptions; failure to monitor the elder's condition and report changes to a physician and failure to maintain adequate records of the elder's condition; and failure to maintain adequate staff levels to provide adequate custodial and nursing care for the elder. Commencing in approximately 2001 (after plaintiffs could no longer afford private caregivers/companions), plaintiffs advised defendants that decedent had bruises on her body caused by physical abuse,

---

[1] All further references to section 340.5 are to Code of Civil Procedure section 340.5.

and that she was being emotionally abused by the staff, which was withholding food and water, screaming at her, and threatening her.

Defendants' motion for partial judgment on the pleadings as to the elder abuse cause of action was granted in February 2004.[2] Defendants contended that the applicable statute of limitations for the elder abuse cause of action is the one set forth in section 340.5, and that the tolling provision of Code of Civil Procedure section 352 for insanity cannot extend the time to commence an action. They asserted that the statute began to run in 1998 when decedent sustained appreciable harm, and thus the complaint filed on December 23, 2002, was untimely.[3]

Thereafter, *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771 [11 Cal.Rptr.3d 222, 86 P.3d 290] was decided. Plaintiffs moved for reconsideration, contending *Covenant Care* constituted new law informing the issue of whether section 340.5 applies to custodial elder abuse actions against health care providers. Plaintiffs contended that the analysis of *Covenant Care* requires the conclusion that the section 340.5 statute of limitations is not applicable to a cause for custodial elder abuse. They argued that section 340.5 applies only to actions against "health care provider[s] based upon . . . professional negligence," whereas here defendants are sued for elder abuse in their separate and distinct capacities as "elder custodians" rather than as "health care providers," and elder abuse is based upon reckless or intentional neglect requiring a higher degree of culpability than "professional negligence." Plaintiffs relied upon the definitions of, and the distinctions between, these terms established in *Covenant Care*. Plaintiffs acknowledged that *Covenant Care* and the earlier case of *Delaney v. Baker* (1999) 20 Cal.4th 23 [82 Cal.Rptr.2d 610, 971 P.2d 986], mandate evaluation of the legislative purpose underlying each statute or statutory scheme to ascertain the intended definitions of its terms, precluding automatic attribution of the same meaning to identical or similar language used in different statutes with different purposes.

Defendants opposed the motion. They contended that *Covenant Care* is totally inapplicable to this case because it construes the legislative purpose underlying Code of Civil Procedure section 425.13, rather than section 340.5, and establishes that the same language in different statutes may not be automatically given the same meaning but instead the meaning depends upon the legislative purpose underlying each individual statute.

---

[2] The motion was made by all defendants except the physician defendant, Payman Khorrami.

[3] Dr. Khorrami thereafter filed a motion for partial judgment on the pleadings on statute of limitations grounds.

The trial court's tentative ruling was to grant plaintiffs' motion and reinstate the elder abuse cause. However, after hearing oral argument on April 14, 2004, the court denied plaintiffs' motion for reconsideration, and also granted partial judgment on the pleadings in favor of the physician defendant, by order dated April 15, 2004.

The trial court stated: "This court found that the facts in the Plaintiffs' cause of action for elder abuse in this case are consistent with a cause of action for professional negligence which is governed by [Code of Civil Procedure] 340.5." The court explained its ruling as follows: (1) "[I]t does not appear that the rationale underlying the *Covenant Care* decision extends to the statute of limitations question presented in this case"; (2) "In *Delaney v. Baker*[, *supra*, 20 Cal.4th 23, 29], the Supreme Court stated 'To ensure that the legislative intent underlying MICRA is implemented, we have recognized that the scope of conduct afforded protection under MICRA provisions (actions "based on professional negligence") must be *determined after consideration of the purpose underlying each of the individual statutes*' "; (3) "The court in *Central Pathology* [*Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181 [10 Cal.Rptr.2d 208, 832 P.2d 924]] stated that the terms 'arising [from] professional negligence' and 'based on professional negligence' do not yield a single, definitive meaning"; (4) "Plaintiffs present no authority for their contention that the Legislature's paramount concern in enacting the [E]lder [A]buse Act was the rights of 'legally insane' elders"; (5) "The purpose served by a statute of limitations ([i.e.], preventing the assertion of demands which, through the unexcused lapse of time, have been rendered difficult or impossible to defend) is quite different from the purpose of a pleading requirement ([i.e.], requiring a litigant to specifically plead his/her cause of action in order to prevent frivolous claims) [i.e., [Code of Civil Procedure] section 425.13]"; and (6) "Thus for this reason, as well as the judicial principal [*sic*: principle] of elevating the effectuation of a statute's purpose over terminological uniformity, this court declines to adopt the *Covenant Care* interpretations of the terms 'health care provider' and 'professional negligence' applicable to 425.13 and apply them to [Code of Civil Procedure] 340.5 in this case."

Plaintiffs then filed their petition for writ of mandate. By order dated June 16, 2004, as clarified on June 23, 2004, we issued an alternative writ of mandate, issued a temporary stay of further proceedings in respondent superior court, requested that defendants file a return and plaintiffs a reply,

and set the matter for oral argument. For reasons that we now explain, we grant a peremptory writ of mandate.[4]

## DISCUSSION

The challenged order does not deny plaintiffs the opportunity to prosecute a substantial portion of their action because plaintiffs have seven remaining causes of action (battery, breach of contract, intentional infliction of emotional distress, fraud, breach of the "Residents' Bill of Rights," "willful misconduct," and wrongful death) which are based on essentially the same facts as their elder abuse cause and afford them the opportunity to recover *nearly* all the damages they could seek on the elder abuse cause—except for the potential to recover a maximum of $250,000 for pain and suffering of the elder prior to her death. (See Welf. & Inst. Code, § 15657, subd. (b).) The potential for such recovery is significant, however, and we further recognize the value of addressing the issue presented, which is one of statewide importance that has not been addressed in a published opinion.

The issue presented is one of statutory construction: whether the absolute three-year statute of limitations of section 340.5 (a Medical Injury Compensation Reform Act (MICRA) statute which since 1977 has been facially applicable only to "actions against . . . health care provider[s] based on [their] alleged professional negligence") was intended by the Legislature (as of 1991 when it made significant amendments to the Elder Abuse Act to encourage private civil actions) to apply also to causes of action against health care providers for "custodial elder abuse" under the Elder Abuse Act.

■ To establish elder abuse, a plaintiff must show defendant was guilty of "recklessness, oppression, fraud, or malice in the commission of [physical, neglectful, or financial elder abuse]." (Welf. & Inst. Code, § 15657.)[5] Also

---

[4] Defendants filed a motion to strike portions of plaintiffs' reply, contending that plaintiffs raised a new argument therein that defendants had a policy of withholding proper care from non-Medicare patients, and attached to their reply a document regarding allocation of nursing hours. That argument by plaintiffs, and the supporting documentation, were in no way considered or relied upon in resolving this matter.

[5] Welfare and Institutions Code section 15657 provides in pertinent part: "Where it is proven by clear and convincing evidence that a defendant is liable for physical abuse as defined in Section 15610.63, neglect as defined in Section 15610.57, or financial abuse as defined in Section 15610.30, and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse, in addition to all other remedies otherwise provided by law: [¶] (a) The court shall award to the plaintiff reasonable attorney's fees and costs. . . . [¶] (b) The limitations imposed by Section 337.34 of the Code of Civil Procedure [forbidding a decedent plaintiff's estate from obtaining pain and suffering damages] shall not apply. However, the damages recovered shall not exceed the damages permitted to be recovered pursuant to subdivision (b) of Section 3333.2 of the Civil Code [limiting recovery of noneconomic losses to $250,000]."

relevant here, section 15657.2 provides: "Notwithstanding this article, any cause of action for injury or damage against a health care provider, as defined in Section 340.5 of the Code of Civil Procedure, based on the health care provider's alleged professional negligence, shall be governed by those laws which specifically apply to those professional negligence causes of action."

The pertinent provisions of section 340.5 are: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for [fraud, intentional concealment, or presence in the injured person of a foreign body with no therapeutic or diagnostic purpose]." Section 340.5 defines both "health care provider," and "professional negligence." "For the purposes of this section: [¶] (1) 'Health care provider' means any person licensed or certified pursuant to [specified statutes]; and any clinic, health dispensary, or health facility, licensed pursuant to [specified statutes]. [¶] (2) 'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital."

The controlling analysis requires that we evaluate the legislative purposes of each statute or statutory scheme individually to determine whether identical or similar language used in statutes in different statutory schemes is intended to have the same meaning or is intended to have a narrow or broad meaning in a particular statute. (*Covenant Care, Inc. v. Superior Court*, *supra*, 32 Cal.4th 771; *Delaney v. Baker*, *supra*, 20 Cal.4th 23; *Central Pathology Service Medical Clinic, Inc. v. Superior Court*, *supra*, 3 Cal.4th 181.) Here, the analysis focuses primarily upon whether the language in

---

Other pertinent provisions of the Elder Abuse Act are contained in Welfare and Institutions Code section 15600, subdivisions (c) and (d) (recognizing that a significant number of elders have developmental disabilities and mental and verbal limitations that leave them vulnerable to abuse and incapable of asking for help and protection, and that those elders at the greatest risk of abuse or neglect suffer physical impairments and other poor health that place them in a dependent and vulnerable position); sections 15610.17 and 15610.47 (defining "care custodian" as including professional health care facilities such as "long-term care facilities," as defined); and section 15610.57 (defining "neglect" as the negligent failure "of any person having the care or custody of an elder" to assist in personal hygiene, the provision of food, clothing, or shelter, or the negligent failure to provide medical care for physical and mental health needs).

All further references to section 15600 et seq. are to the Welfare and Institutions Code.

section 340.5 defining its applicable scope as "action[s] . . . against . . . health care provider[s] based upon [their] alleged professional negligence" *is in-tended to be broadly interpreted to include actions for reckless or intentional physical abuse or neglect of patients which is in any manner related to the provision of professional health care services.* We note that the Elder Abuse Act is silent as to which statute of limitations applies to elder abuse actions.

The Supreme Court's opinion in *Delaney v. Baker, supra,* 20 Cal.4th 23 (*Delaney*), is highly instructive, and we therefore discuss it at length. There, the court framed the issue before it as follows: "The question presented by this case is whether a health care provider which engages in the 'reckless neglect' of an elder adult within the meaning of section 15657 will be subject to section 15657's heightened remedies, or if section 15657.2 forbids the application of section 15657 under these circumstances. The defendants, a nursing home and two of its owners, argue for the latter position, claiming that the term 'based on . . . professional negligence' used in section 15657.2 includes such reckless neglect." (*Id.* at p. 27.)

The Supreme Court examined the legislative history and background of section 15657.2. "[I]t indicates that those who enacted the statute thought that the term 'professional negligence,' at least within the meaning of section 15657.2, was mutually exclusive of the abuse and neglect specified in section 15657. This is seen most clearly in the Legislative Counsel's Digest to the 1991 amendments to the Elder Abuse Act (Sen. Bill No. 679 (1991–1992 Reg. Sess.)), which included section[s] 15657 and 15657.2. The digest describes section 15657.2 as follows: 'This bill would also specify that actions against health care professionals for professional negligence shall be governed by laws specifically applicable to professional negligence actions, *rather than by these provisions.*' (Legis. Counsel's Dig., Sen. Bill No. 679 (1991–1992 Reg. Sess.), p. 1, italics added.) Similarly, the bill was described in the Assembly Subcommittee on the Administration of Justice as follows: 'This bill does not apply to professional negligence actions against health care providers. Such action shall be *exclusively* governed by existing statutory provisions.' (Assembly Subcom. on Admin. of Justice, Analysis of Sen. Bill No. 679 (1991–1992 Reg. Sess.) as amended July 16, 1991.) Similar evidence can be found in the Senate Judiciary Committee's analysis of the bill (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 679 (1991–1992 Reg. Sess.) Apr. 30, 1991, p. 2) and throughout the legislative history of the 1991 amendments." (*Delaney, supra,* 20 Cal.4th at p. 30, fn. omitted.)

The Supreme Court rejected the defendants' contention that "the term 'based on . . . professional negligence' [as used in section 15657.2] covers all conduct 'directly related to the rendition of professional services' (*Central Pathology Service Medical Clinic, Inc. v. Superior Court[, supra,]* 3 Cal.4th

181, 192 . . .)—a reading [defendants] argue would broadly exempt from the heightened remedies of section 15657 health care providers who recklessly neglect elder and dependent adults." (*Delaney, supra,* at pp. 30–31.) Instead, the court adopted a much narrower reading of "based on professional negligence," concluding that " 'reckless neglect' under section 15657 is distinct from causes of action 'based on . . . professional negligence' within the meaning of section 15657.2, *and so health care providers who engage in such neglect would be subject to section 15657's remedies." (Id.* at p. 31, italics added.)

The court noted that " '[p]rofessional negligence' in section 15657.2 is defined elsewhere as a 'negligent act or omission to act by a health care provider in the rendering of professional services.' " (*Delaney, supra,* 20 Cal.4th at p. 31.) In fact, section 15657.2 refers to the definition of professional negligence found in section 340.5 (the statute of limitations for actions against health care providers for professional negligence). Generally, " 'negligence' is the failure ' "to exercise the care a person of ordinary prudence would exercise under the circumstances," ' " and professional negligence is simply one type of negligence, to which general negligence principles apply. (*Delaney, supra,* at p. 31, quoting *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 997 [35 Cal.Rptr.2d 685, 884 P.2d 142].)

In contrast, "[i]n order to obtain the remedies available in section 15657, a plaintiff must demonstrate by clear and convincing evidence that defendant is guilty of something more than negligence; he or she must show reckless, oppressive, fraudulent, or malicious conduct. The latter three categories involve 'intentional,' 'willful,' or 'conscious' wrongdoing of a 'despicable' or 'injurious' nature. (Civ. Code, § 3294, subd. (c); see also *College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 721 [34 Cal.Rptr.2d 898, 882 P.2d 894].) 'Recklessness' refers to a subjective state of culpability greater than simple negligence, which has been described as a 'deliberate disregard' of the 'high degree of probability' that an injury will occur [citations]. Recklessness, unlike negligence, involves more than 'inadvertence, incompetence, unskillfulness, or a failure to take precautions' but rather rises to the level of a 'conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it.' (Rest.2d Torts, § 500, com. (g), p. 590.)" (*Delaney, supra,* 20 Cal.4th at pp. 31–32, fn. omitted.)

"Section 15657.2 can therefore be read as making clear that the acts proscribed by section 15657 do not include acts of simple professional negligence, but refer to forms of abuse or neglect performed with some state of culpability greater than mere negligence. Thus, . . . causes of actions within the scope of section 15657 are not 'cause[s] of action . . . based on . . .

professional negligence' within the meaning of section 15657.2. . . . The Legislature could have reasonably decided that an express statement excluding professional negligence from section 15657 was needed because the language of section 15657, and in particular the terms 'neglect' and 'recklessness,' may have been too indefinite to make sufficiently clear that 'professional negligence' was to be beyond the scope of section 15657." (*Delaney, supra,* 20 Cal.4th at p. 32.)

The sponsor of the elder abuse legislation took the position that the high standard of proof imposed by section 15657—clear and convincing evidence of liability, and a showing of recklessness, malice, oppression, or fraud—adequately protects providers of care from liability for acts of simple negligence, or even gross negligence. The sponsor urged that existing limitations on damages and attorney fees should not apply in such extreme cases. (*Delaney, supra,* 20 Cal.4th at p. 32.)

■ The purpose of the Elder Abuse Act "is essentially to protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect." (*Delaney, supra,* 20 Cal.4th at p. 33.) "The impetus for MICRA was the rapidly rising costs of medical malpractice insurance in the 1970's," and because the inability of doctors to obtain malpractice insurance and reasonable rates endangered the health of Californians. "The response was to pass the various statutes that comprise MICRA to limit damages for lawsuits against a health care provider based on professional negligence." (*Id.* at pp. 33–34.) The difference in focus between the Elder Abuse Act and MICRA "can be clarified by considering the differing types of conduct with which section 15657 and MICRA are concerned. As discussed, section 15657 concerns 'neglect[,]' 'physical abuse[,]' and 'fiduciary abuse.' " (*Id.* at p. 34.) Neglect within the meaning of the Elder Abuse Act "does not refer to the performance of medical services in a manner inferior to ' "the knowledge, skill and care ordinarily possessed and employed by members of the profession in good standing" ' [citation], but rather to the failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations." (*Ibid.*) It would make no sense if determining whether a recklessly neglectful custodian of an elderly person was subject to section 15657 simply depended on the custodian's licensing status. (*Id.* at p. 35.)

■ The Elder Abuse Act's goal was to provide heightened remedies for "acts of egregious abuse" against elder and dependent adults, while allowing acts of negligence in the rendition of medical services to elder and dependent adults to be governed by laws specifically applicable to such negligence. (*Delaney, supra,* 20 Cal.4th at p. 35.)

■ Thus, *Delaney* makes clear that a cause of action for custodial elder abuse against a health care provider is a separate and distinct cause of action from one for professional negligence against a health care provider. It follows that egregious acts of elder abuse are not governed by laws applicable to negligence. Specifically, section 15657.2 was enacted "to make sufficiently clear that 'professional negligence' was to be beyond the scope of section 15657." (*Delaney, supra,* 20 Cal.4th at p. 32.) Section 15657.2 specifies that actions for professional negligence *as defined in section 340.5* are governed by laws specifically applicable to actions for professional negligence (e.g., § 340.5), so it would seem to follow that section 340.5 has *no* application to actions brought under section 15657.

As the Supreme Court further noted, the legislative history of sections 15657 and 15657.2 also discloses that opponents of the bill assumed that the heightened remedies of section 15657 were to apply to health care providers. "Notwithstanding the fact that section 15657.2 (originally designated 15662) was included in Senate Bill No. 679 from the very beginning (see Sen. Bill No. 679, 1st reading Mar. 5, 1991 (1991–1992 Reg. Sess.)), the California Association of Health Facilities [CAHF], as the representative of the nursing home industry, opposed the bill. . . . 'In opposition to this bill, the [CAHF] argues that [it] poses a real threat to healthcare institutions and healthcare professionals alike. They believe that the effect of this bill will be to focus additional claims on healthcare providers, and to increase their exposure in litigation. "The net result will simply be higher insurance premiums for health care providers of all types." ' (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 679 (1991–1992 Reg. Sess.) p. 4.)" (*Delaney, supra,* 20 Cal.4th at p. 36.) "From this legislative history, it appears clear that both the Legislature that enacted Senate Bill No. 679 and the opponents of [the bill] understood that one of the major objectives of this legislation was the protection of residents of nursing homes and other health care facilities. It is contrary to this objective to then read the phrase 'based on . . . professional negligence' found in section 15657.2 to mean that nursing homes or other health facilities are largely exempt from liability under section 15657 for the heightened remedies to which custodians who are not health care professionals are subject." (*Id.* at pp. 36–37.)

In a recent case, *Covenant Care, Inc. v. Superior Court, supra,* 32 Cal.4th 771 (*Covenant Care*), the Supreme Court construed similar language in Code of Civil Procedure section 425.13, subdivision (a), which sets forth procedural prerequisites to seeking punitive damages in "any action for damages arising out of the professional negligence of a health care provider." The court held that section 425.13 does not apply to elder abuse actions because the statute is not needed to weed out frivolous elder abuse claims, which require essentially the same high level of mental culpability as is required for punitive damages. Significantly, for our present purposes, *Covenant Care*

adopts the *Delaney* construction of egregious misconduct covered by the Elder Abuse Act as separate and distinct from "professional negligence" as used in the Elder Abuse Act. (§ 15657.) (*Id.* at pp. 783–784.) That conclusion "contravenes any suggestion that, in defining elder abuse to include failure to provide medical care, the Legislature intended that health care providers, alone among elder custodians, would enjoy under the [Elder Abuse] Act the procedural protections they enjoy when sued for negligence in their professional health care practice." (*Id.* at p. 784, citing *Delaney, supra,* 20 Cal.4th at p. 35.) *Covenant Care* concludes that section 425.13 is intended to protect health care providers (or practitioners) only in their professional capacity as providers; there was no intent to protect them in any other capacity. (*Covenant Care, supra,* at p. 786.) "[E]lder abuse as defined in the Act, even when committed by a health care provider, is not an injury that is 'directly related' to the provider's professional services. That statutory elder abuse may include the egregious withholding of medical care for physical and mental health needs is not determinative. As a failure to fulfill custodial duties owed by a custodian who happens also to be a health care provider, *such abuse is at most incidentally related to the provider's professional health care services.*" (*Ibid.,* italics added.) "Statutorily, as well as in common parlance, the function of a health care provider is distinct from that of an elder custodian, and 'the fact that some health care institutions, such as nursing homes, perform custodial functions *and* provide professional medical care' (*Delaney, supra,* 20 Cal.4th at p. 34 . . .) does not mean that the two functions are the same." (*Ibid.*)

Further, the court stated that the fundamental legislative purposes underlying the Elder Abuse Act and section 425.13, respectively, would not be promoted were the two regimes to be linked. Indeed, such linkage actually would undermine the purposes of the Elder Abuse Act, adopted to protect a particularly vulnerable portion of the population from gross mistreatment by adding heightened remedies to enable interested persons to engage attorneys to take up the cause of abused elderly persons. To burden such causes with section 425.13's procedural requirements would undermine the Legislature's intent to foster such actions by providing litigants and attorneys with incentives to bring them. (*Covenant Care, supra,* 32 Cal.4th at p. 787.)

■ The present record does not contain any suggestion that the Legislature had an implicit intent that section 340.5 was to protect health care providers in any other capacity (particularly the "elder custodian" capacity) than as health care providers.[6] The Code of Civil Procedure section 335.1

---

[6] Section 340.5 was amended in 1975 and 1977 as part of the MICRA legislation, with the purpose of reducing medical malpractice insurance premiums. Defendants do not point to any legislative history or judicially noticeable facts, or offer any analysis showing that section 340.5 is intended to have a broader scope than actions "based upon . . . professional

statute of limitations (applicable to causes for "assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another") is facially applicable to elder abuse actions and provides a two-year limitation period, and is subject to tolling for "insanity" as defined in Code of Civil Procedure section 352.

As discussed, the Legislative history of the Elder Abuse Act indicates that section 15657.2 was added to specify that "professional negligence" is to be controlled by other statutes specifically applicable thereto, and "professional negligence" is mutually exclusive of the elder abuse and neglect specified in section 15657 as actionable under the act. (*Covenant Care, supra,* 32 Cal.4th at p. 785.) It may reasonably be concluded that a new statutory scheme, which explicitly announces that particular conduct shall be exclusively controlled by existing statutes, which specifically apply to such conduct, manifests a legislative intent that the earlier statutes not be broadly construed to apply to the distinct conduct controlled by the new statute.

*Delaney,* in determining that elder abuse causes are separate and distinct from professional negligence causes, recognized that the intent of the Elder Abuse Act is to subject health care providers to its "heightened remedies" when their acts or omissions are reckless or willful and, thus, more culpable than professional negligence. No reason is apparent why this analysis does not apply equally to the statute of limitations issue. If the legislative intent was that reckless or willful misconduct by health care providers elevates their exposure from mere negligence liability to the "heightened remedies" of the act, similarly the more egregious nature of the misconduct would logically move them from the protection of the shorter statute of limitations to the functionally longer limitations statutes applicable to all others who commit custodial elder abuse. (See *Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963 [114 Cal.Rptr.2d 748] [civil elder abuse action against health care provider convicted of felony elder abuse (Pen. Code, § 368) subject to statute of limitations for actions based on defendant's commission of felony offense (Code Civ. Proc., § 340.3) rather than section 340.5].)

In addition, because the "clear and convincing" burden of proof required by the act for elder abuse actions substantially protects health care providers (and others) from the difficulties of defending a delayed action, it is likely that the Legislature intended that statutes of limitations which would allow prosecution of actions involving custodial neglect discovered more than three

---

negligence." In addition, our own analysis of the legislative history of section 340.5 and related MICRA amendments does not indicate the Legislature specifically considered the scope of coverage of medical liability policies, i.e., whether medical liability insurance covered reckless or intentional acts, as opposed to simple negligence.

years from the time of injury should apply to actions brought under the Elder Abuse Act. Actions on behalf of elders who are insane under the section 352 definition would be promoted by the longer section 335.1 period and the tolling effect of section 352. For dependent elders who are not insane within the meaning of section 352 and can promptly detect and report abuse or neglect to family or representatives, application of section 335.1 would serve the purpose of the Elder Abuse Act decidedly more than application of section 340.5 by giving a two-year limitation period from the time of discovery (or imputed discovery) rather than the one year allowed by section 340.5.

## DISPOSITION

The alternative writ is discharged. Let a peremptory writ of mandate issue compelling respondent superior court to set aside its orders of February 19, 2004, and April 15, 2004, granting partial judgment on the pleadings as to plaintiffs' cause of action for elder abuse. This court's June 16, 2004 order staying all further proceedings in this matter is to remain in effect pending finality of this decision. Plaintiffs to recover costs in this proceeding.

Epstein, Acting P. J., and Hastings, J., concurred.

The petition of real party in interest Payman Khorrami for review by the Supreme Court was denied January 19, 2005. Chin, J., did not participate therein. Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.