Filed 5/18/23  Zhang v. Knapke CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JEFF BAOLIANG ZHANG, | B318744 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV27604) |
| v. | |
| KORY KNAPKE, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

Jeff Baoliang Zhang, in pro. per., for Plaintiff and Appellant.

Cole Pedroza, Kennth R. Pedroza, Dana L. Stenvick; Reback, McAndrews & Blessy, Raymond L. Blessey and Sean L. Cooper, for Defendant and Respondent.

Jeff Baoliang Zhang was charged with attempted murder in December 2011 after firing shots at the Chinese consulate in Los Angeles following a protest. Dr. Kory Knapke, a forensic psychiatrist, was appointed in February 2012 to conduct a competency examination of Zhang. Dr. Knapke's report led to a finding that Zhang was not competent to stand trial within the meaning of Penal Code section 1368 and to his commitment to Patton State Hospital. Zhang was ultimately found competent, pleaded no contest in 2015 to aggravated assault and shooting at an inhabited dwelling with related firearm enhancements and was sentenced to nine years in state prison. He was released from prison in June 2019 but committed to Atascadero State Hospital as a mentally disordered offender (MDO) until July 2020.

Zhang, representing himself, sued Dr. Knapke on July 28, 2021. After a demurrer to the original complaint was sustained with leave to amend, Zhang filed a first amended complaint alleging causes of action for fraud, elder abuse, other unspecified intentional torts and violations of federal law and the United States Constitution. Zhang asserted, in part, that Dr. Knapke created a "counterfeit" version of his February 5, 2012 report to the court in the summer of 2017 that was used in proceedings to continue his post-prison confinement as an MDO. He further alleged in his amended complaint that a March 2013 report by Dr. Knapke containing a false diagnosis of delusions, which, according to Zhang's original complaint, Dr. Knapke showed him at that time and had been used to continue the finding he was not competent to stand trial, was also a "counterfeit," not created until 2019 for use in the MDO proceedings.

The trial court sustained without leave to amend Dr. Knapke's demurrer to the first amended complaint, ruling Zhang's claims were barred by the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (d). The court also ruled Zhang had failed to allege sufficient facts for a cause of action under the elder abuse statute. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Zhang's Original Complaint*

Zhang was arrested on December 15, 2011 for firing shots at the Chinese consulate after protest signs he had been using were confiscated while he was at lunch.[1] His original complaint focused on three purported actions by Dr. Knapke that created or continued a false picture of his mental health—the original February 2012 report regarding Zhang's competence to stand trial, a "counterfeit" version of that report purportedly prepared "around summer 2017," and Dr. Knapke's March 2013 report that was the basis for the superior court's finding that Zhang remained not competent to stand trial at that time.

---

[1]    In a statement attached as an exhibit and incorporated in his complaint, Zhang explained, "On 12-15-2011, I went and made a new protest at the Chinese consulate in LA because for a long time, their agents and mobsters had been heatedly after me for my life due to my political ideas about China and my criticism after their judicial corruption. I displayed eight big signboards which denounced their murder plots and their persecution against me . . . . [Upon returning from lunch, I] found all the signboards disappeared. I immediately realized that the consulate staff had removed them away. . . . [In despair I] reeled down the car window and used my legal weapon to fire some shots at the closed side-door of the empty Chinese consulate."

Specifically, Zhang alleged Dr. Knapke was hired on February 2, 2012 and interviewed Zhang at the Twin Towers Correctional Facility where he had been in custody since his arrest. Zhang's original defense attorney (a deputy public defender) told Zhang that Dr. Knapke had made a positive evaluation of him: "'The doctor believes you are a man of intelligentsia [*sic*].' That was all for Knapke's mental evaluation about Plaintiff at that time."[2] Notwithstanding this report, Zhang alleges that a different public defender thereafter deceived the superior court mental health department, which found Zhang not competent to stand trial. Zhang was sent to Patton State Hospital for involuntary antipsychotic medication and treatment.[3]

---

[2] In the section of his report dated February 5, 2012 labeled "Psychiatric-Legal Opinions," attached to Zhang's complaint, Dr. Knapke stated that Zhang "appears to be a very intelligent individual" and that he understood the charges and proceedings against him. However, Dr. Knapke opined, "The defendant suffers from Delusional Disorder, Persecutory Type. He currently has a vast paranoid conspiracy theory that Communist Chinese agents have been persecuting him for years because of his anti-Communist activism. He believes his Chinese agents are attempting to assassinate him. He also believes the Chinese agents have infiltrated the American Mafia organizations and as a result he also believes mobsters are attempting to kill him as well. . . . [¶] . . . [¶] [T]he defendant ruminates on his persecutory delusions to such an extent that I believe it impairs his ability to rationally cooperate with his attorney."

[3] Zhang in July 2021 sued two of the public defenders who had represented him during the time he was found not competent to stand trial, apparently for legal malpractice, fraud and elder abuse. The trial court sustained a demurrer with leave to amend.

Zhang was returned to county jail in mid-February 2013. Dr. Knapke came to see Zhang a second time in March 2013 and allegedly showed Zhang a "fake medical report with the diagnosis of 'delusion'" based on an intentional misrepresentation by Dr. Knapke of Zhang's diagnosis while at Patton State Hospital. Zhang alleged that Dr. Knapke's March 2013 false medical report "sabotaged" his scheduled release, caused him to be sent back to Patton and led to his confinement for the following eight years.

Zhang additionally alleged that in the summer of 2017, while Zhang was confined at the California Institute for Men in Chino, Dr. Knapke wrote a "counterfeit evaluation" of his mental health, replacing his original positive February 2012 report with a negative one, declaring that Zhang had serious mental problems. That false report, which retained the February 5, 2012 date, was used to support the finding that Zhang was an MDO and his commitment to Atascadero State Hospital for treatment in June 2019.

Zhang alleged a cause of action for fraud, based on Dr. Knapke's reportedly false March 2013 mental health evaluation and alteration in the summer of 2017 of his original, positive mental health report made in February 2012. Zhang asserted, "Since March 2013 to the time Plaintiff was discharged from [Atascadero State Hospital] in July 2020, Defendant's two fake reports played a very hostile and important part in harming the Plaintiff." He also alleged a federal law violation (perjury) based on the two counterfeit medical reports and a violation of his sacred rights as a United States citizen in

---

Zhang failed to file an amended complaint. A judgment of dismissal with prejudice was affirmed on appeal. (*Zhang v. County of Los Angeles* (Feb. 27, 2023, B319492) [nonpub. opn.].)

violation of the Fourteenth Amendment. He sought $200 million in damages.[4]

Dr. Knapke demurred and moved to strike portions of the complaint, arguing Zhang had failed to allege fraud with the requisite specificity and the fraud cause of action was, in any event, barred by Code of Civil Procedure section 338, subdivision (d)'s three-year statute of limitations.[5] In his opposition Zhang insisted the complaint sufficiently identified two frauds, "One happened on March 20, 2013, the other happened in summer 2017." As for his failure to file within three years of learning of the fraud as early as 2013, Zhang argued he was unable to do so because of his wrongful detention from December 2011 to July 2020.

The trial court sustained Dr. Knapke's demurrer to the original complaint on November 3, 2021. Zhang was given leave to amend.[6]

2. *Zhang's First Amended Complaint*

Zhang filed a first amended complaint on November 19, 2021, which contained a greatly expanded description of Zhang's

---

[4] Zhang filed a statement of damages in September 2021 that divided his request for damages into categories, including a prayer for $30 million in damages because he "[l]ost eight years of freedom due to the counterfeit medical report in 2013." The statement also specified that he sought $50 million in punitive damages.

[5] The record on appeal does not include Dr. Knapke's demurrer and motion to strike; but Zhang's opposition papers, which are included, quoted the pertinent portions of those documents.

[6] The record on appeal does not include the trial court's ruling on the demurrer.

6

mistreatment by Dr. Knapke and others.[7]  The amended pleading asserted "this case is about fraud and intentional tort liability"; realleged Zhang's claims for violating federal law (perjury) and the United States Constitution; and added a new cause of action for elder abuse.  Zhang again alleged that Dr. Knapke's February 5, 2012 report was "a completely counterfeit document [that] never existed at that time.  The full content was created [at] a later date in order to send Plaintiff to the mental hospital again or to keep such a bad record for my mental history."  However, although Zhang alleged, as he had in his original complaint, that the February 5, 2012 report was not actually prepared until the summer of 2017, elsewhere in the first amended complaint Zhang quoted a December 14, 2014 evaluation by another mental health professional that referred to, and quoted from, Dr. Knapke's 2012 report in which Dr. Knapke diagnosed Zhang as having a "delusional disorder, persecutory type" and noted that, after the treatment team at Patton believed Zhang had been restored to competency and returned him to county jail (in 2013), Dr. Knapke again wrote "the defendant had not reached trial competency due to his continuing delusional beliefs (for example, that a jury trial would be preferred because this would '. . . minimize the Chinese government's influence on the legal proceedings.'"  Zhang included the December 14, 2014 report as an exhibit to his pleading.

The first amended complaint again alleged that Dr. Knapke brought with him in March 2013 a false evaluation stating Zhang

_____

[7]     Zhang's original complaint with attachments was 36 pages long.  His first amended complaint with exhibits totaled 112 pages.

was delusional, but also alleged, "As for the second report dated 03-21-2013, Plaintiff believes it should be written by Defendant in summer 2019 for my MDO treatment" and that, "[T]he second mental report by Defendant dated 03-21-2013 was in fact created around summer 2019 to send Plaintiff to the mental hospital for the third time although Plaintiff has not seen its full contents till this date."

Among the exhibits attached to, and incorporated in, the first amended complaint were (1) the minute order dated March 2, 2012 from the superior court's mental health department 95 finding Zhang mentally incompetent within the meaning of Penal Code section 1368 and committing him to the Department of Mental Health for placement at Patton State Hospital, which stated, "Counsel waive oral testimony of Doctor Kory Knapke. Certificates of medical examiner are received in evidence by reference"; and (2) the minute order dated April 10, 2013, again finding Zhang incompetent to stand trial and recommitting him to Patton State Hospital, which stated Dr. Knapke's report dated March 21, 2013 had been received, and noted, "Counsel waives oral testimony of DR. KORY KNAPKE. Certificates of Medical Examiner are received in evidence by reference."

The newly added cause of action for elder abuse included the allegation that Zhang was 68 years old in April 2012 when he was sent to Patton State Hospital for involuntary treatment and 69 years old when he was returned to Patton in May 2013. The treatment he received because of Dr. Knapke's slanders and failure to provide a fair evaluation was "absolutely unnecessary" and caused Zhang to suffer "serious harm mentally and

physically" not only in 2012 and 2013 but also "for quite a few years to 2019 and afterwards."

### 3. *Dr. Knapke's Demurrer and the Trial Court's Ruling*

Dr. Knapke demurred to the first amended complaint on December 21, 2021. The demurrer emphasized that in his original complaint Zhang had alleged Dr. Knapke made a counterfeit medical report in 2013 and another counterfeit evaluation in 2017 and "'[t]hese two reports aimed at bringing serious harms to Plaintiff's mental health.'" Then, in an effort to avoid the statute of limitations after Dr. Knapke's demurrer to the original complaint had been sustained, Zhang alleged for the first time that the report dated March 21, 2013 had actually been created in the summer of 2019. Dr. Knapke argued the new allegation was prohibited by the sham pleading doctrine, Zhang's cause of action for fraud was based on conduct that had occurred nine years earlier and thus barred by the governing statute of limitations, and Zhang had again failed to plead fraud with the requisite specificity. With respect to the new cause of action for elder abuse, Dr. Knapke argued Zhang had failed to seek leave of court to add this claim; it, too, was barred by the applicable statute of limitations (two years pursuant to Code of Civil Procedure section 335.1); and Zhang failed to properly plead the elements of the cause of action, including that the necessary custodial relationship existed between Zhang and Dr. Knapke.

In his response to the demurrer Zhang now asserted that Dr. Knapke made three counterfeit reports: one with a diagnosis of "delusion" that Dr. Knapke showed Zhang on March 20, 2013; a second one revealed to Zhang in the summer of 2017 that was dated February 5, 2012; and a third report revealed to Zhang in the summer of 2019 dated March 21, 2013 that Zhang had not

9

previously seen. Zhang contended there was no contradiction between the allegations in his original complaint and the first amended complaint and the sham pleading doctrine did not apply.

Zhang also argued his first amended complaint was sufficiently specific, noting he had repeatedly alleged that Dr. Knapke made false accusations and false reports, which forced him to stay in the mental hospital in 2012, 2013 and 2019. And he contended he had been unable to file his lawsuit any earlier because his unlawful confinement and isolation while in custody prevented him from representing himself or obtaining fair representation in his criminal and civil matters.

The trial court sustained the demurrer without leave to amend and dismissed the lawsuit. In its ruling the court explained that Zhang's causes of action for fraud and elder abuse were based on a report by Dr. Knapke written in 2012 and 2013 that had been part of Zhang's psychiatric record for eight or nine years and "Plaintiff concedes that he was aware of the report for all of this period of time since 2013 and has tried to have it deleted or not have an effect on his custodial status." Notwithstanding Zhang's argument in opposition to the demurrer that he discovered the effects of the report only in 2017, the court continued, his claims are barred by the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (d). In addition, the court ruled, Zhang had not alleged sufficient facts demonstrating reckless, fraudulent or malicious conduct to plead a cause of action for elder abuse. Finally, the court added, "Whether plaintiff has causes of action that he might file in federal court, as orally suggested by him at length during oral argument, is beyond the scope of this Court's jurisdiction."

10

Zhang filed a timely notice of appeal.

## DISCUSSION

### 1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the trial court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)

We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; accord, *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) However, "[i]f facts appearing in the exhibits contradict those alleged, the facts in the exhibits take precedence." (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447; accord, *Westamerica Bank v. City of Berkeley* (2011) 201 Cal.App.4th 598, 607 ["'The well-pled allegations that we accept as true necessarily include the contents of any exhibits attached to the complaint. Indeed, the contents of an incorporated document . . . will take precedence over and supersede any inconsistent or contrary allegations set out in the pleading'"]; *Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 ["[u]nder the doctrine of truthful pleading, the courts 'will not close their eyes to situations where a complaint contains allegations of fact inconsistent with

11

attached documents, or allegations contrary to facts which are judicially noticed'"].)

A demurrer based on an affirmative defense is properly sustained when the face of the complaint and matters judicially noticed clearly disclose the defense or bar to recovery. (See *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 224; see also *Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 191; *Marina Tenants Assn. v. Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 130-132.) If "'the complaint's allegations or judicially noticeable facts reveal the existence of an affirmative defense, the "plaintiff must 'plead around' the defense, by alleging specific facts that would avoid the apparent defense. Absent such allegations, the complaint is subject to demurrer for failure to state a cause of action.'"'" (*Esparza v. County of Los Angeles* (2014) 224 Cal.App.4th 452, 459.)

We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 848), but liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 726; see *Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th at p. 1081.)

"'Where the complaint is defective, "[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his [or her] complaint."'" (*Aubry v. Tri-City Hospital Dist., supra*, 2 Cal.4th at p. 970.) A plaintiff may demonstrate for the first time to the reviewing court how a

12

complaint can be amended to cure the defect.  (Code Civ. Proc.,
§ 472c, subd. (a) ["[w]hen any court makes an order sustaining a
demurrer without leave to amend the question as to whether or
not such court abused its discretion in making such an order is
open on appeal even though no request to amend such pleading
was made"]; see *Sierra Palms Homeowners Assn. v. Metro Gold
Line Foothill Extension Construction Authority* (2018)
19 Cal.App.5th 1127, 1132 [plaintiff may carry burden of proving
an amendment would cure a legal defect for the first time on
appeal].)  However, leave to amend should not be granted where
amendment would be futile.  (See *Ivanoff v. Bank of America,
N.A.*, *supra*, 9 Cal.App.5th at p. 726; see also *Rubenstein v. The
Gap, Inc.* (2017) 14 Cal.App.5th 870, 881 ["'[w]hile such a
showing can be made for the first time to the reviewing court
[citation], it must be made'"].)

> 2. *Zhang's Lawsuit Was Properly Dismissed as Time-
> barred*

Zhang's first amended complaint alleged, in essence, that
Dr. Knapke falsely diagnosed Zhang with a mental illness and
prepared reports for the superior court's mental health
department incorporating the false diagnosis, which, in turn, led
to Zhang's involuntary commitment and improper treatment, all,
apparently, at the behest of the Chinese government.  Based on
those allegations, Zhang purported to state causes of action for
fraud, elder abuse and violation of his federal civil rights.  Each
of those claims is barred by the applicable statute of limitations—
three years from discovery of the facts for fraud (Code Civ. Proc.,
§ 338, subd. (d));[8] two years for an elder abuse claim based on

---

[8]     The plaintiff's justifiable reliance on the defendant's
misrepresentation or actionable nondisclosure is an essential

13

physical or mental abuse under Code of Civil Procedure section 335.1 (see *Benun v. Superior Court* (2004) 123 Cal.App.4th 113, 125-126 [applying Code of Civil Procedure section 335.1 governing personal injury actions to elder abuse claim]);[9] and two years pursuant to the statute of limitations governing personal injury actions for Zhang's cause of action for deprivation of civil rights under title 42 United States Code section 1983 (section 1983 cause of action) (see *Shalabi v. City of Fontana* (2021) 11 Cal.5th 842, 847 ["[a] section 1983 cause of action is subject to the forum state's statute of limitations for personal injury torts"].)[10]

---

element of a cause of action for fraud. (See *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 326; *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1096; *Missakian v. Amusement Industry, Inc.* (2021) 69 Cal.App.5th 630, 653.) Zhang, of course, does not allege that he relied on Dr. Knapke's false reports of his delusional disorder. Accordingly, even were it timely, the cause of action for fraud would be properly dismissed for failure to state sufficient facts.

[9] Although Welfare and Institutions Code section 15657.7 establishes a four-year limitations period for financial elder abuse, the Elder Abuse Act does not specify the limitations period applicable to claims for physical abuse and infliction of emotional distress under the Act. The two-year statute of limitations for personal injury claims as set forth in Code of Civil Procedure section 335.1 presumably governs those claims, as held in *Benun v. Superior Court*, *supra*, 123 Cal.App.4th 113, 125-126, but an argument can be made that the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (a), applicable to statutory causes of action, governs. Zhang's elder abuse claim is time-barred under either statute.

[10] Zhang's allegations regarding perjury do not state a cause of action under California law. (*Pollock v. University of Southern*

14

Zhang's pleading presented a confusing chronology; but the exhibits attached to it unequivocally established that Dr. Knapke performed his court-ordered services in 2012 and 2013, many years before Zhang filed his original complaint on July 28, 2021. Zhang alleged, as he must, that Dr. Knapke interviewed him in February 2012 and March 2013. His allegation that Dr. Knapke's original evaluation was positive and that the unfavorable report dated February 5, 2012 was not prepared until summer 2017 (which would still be outside the governing two- and three-year limitations periods) is contradicted by Zhang's additional allegations that Dr. Knapke's "false accusations and false reports" forced him to stay in the mental hospital beginning in 2012, as well as by his allegation that Dr. Phani Tumu, in his December 14, 2014 evaluation of Zhang pursuant to Evidence Code section 730, "cited quotes from Kory Knapke's report dated 02-05-2012 as an important source to tell that Plaintiff had got serious mental problems." As discussed, Zhang's pleading included excerpts from Dr. Tumu's report that expressly referred to Dr. Knapke's February 5, 2012 report and attached Dr. Tumu's report as an exhibit.

Similarly, the June 29, 2015 report from Dr. Andrea Bernhard, quoted by Zhang in his first amended complaint and attached as an exhibit, referred to Dr. Knapke's February 5, 2012

_California_ (2003) 112 Cal.App.4th 1416, 1429 ["[t]here is no civil cause of action for 'perjury'"]; accord, _Lambert v. Carneghi_ (2008) 158 Cal.App.4th 1120, 1143, fn. 9; _Kappel v. Bartlett_ (1988) 200 Cal.App.3d 1457, 1463.) To the extent Zhang sought to allege Dr. Knapke's reports violated his rights under the United States Constitution or title 18 United States Code section 1621 (perjury), any such claim, if cognizable at all, would necessarily fall within the ambit of his section 1983 cause of action.

15

report, which "opined that Mr. Zhang was incompetent to stand trial." Moreover, the minute order from the March 2, 2012 hearing at which Zhang was found incompetent was attached and incorporated into the pleading. That order identified Dr. Knapke (oral testimony waived) and received into evidence the medical certificates necessary to commit Zhang to Patton State Hospital.[11] Even if Zhang had not made his own inconsistent allegations, the contents of the documents he attached as exhibits supersede any contrary allegations set out in the pleading. As did the trial court, we disregard the allegation that Dr. Knapke's negative February 5, 2012 report did not exist until 2017.

As to the March 2013 report by Dr. Knapke, Zhang conceded in his opposition to the demurrer that Dr. Knapke prepared a report dated March 20, 2013, which was the basis for the court's 2013 order committing him to Patton State Hospital for a second time. But he then argued there was an additional negative report, dated March 21, 2013, that was not prepared by Dr. Knapke until summer 2019 for use in the MDO proceedings. In his first amended complaint, however, Zhang insisted there were only two negative reports by Dr. Knapke—the purportedly counterfeit February 5, 2012 report made in 2017 and a new counterfeit report, dated March 21, 2013, created in summer 2019.

---

[11] Zhang alleged in paragraph 115 of the first amended complaint, "In early March 2012, Defendant began to make false comments or counterfeit reports to harm the Plaintiff who was a mentally healthy man. Defendant sent Plaintiff to PSH [Patton State Hospital] as Defendant was the only doctor listed on the first Court Minute Order dated 03-02-2012."

16

Like the claim the February 2012 report was not created until 2017, neither of these internally inconsistent sets of allegations regarding a counterfeit 2019 report withstands scrutiny. Dr. Tumu's 2014 report stated that Dr. Knapke's second report following Zhang's initial release from Patton State Hospital indicated Zhang had not reached trial competency due to his continuing delusional beliefs. Zhang was then recommitted to Patton on April 10, 2013. The minute order from that hearing, attached as an exhibit to Zhang's first amended complaint, identified the medical evaluation received in evidence as Dr. Knapke's report "dated 03/21/13." There was only one March 2013 report by Dr. Knapke. It was dated March 21, 2013 and existed more than six years prior to the summer of 2019.

Zhang's allegations he was unaware of the 2012 and 2013 reports when they were submitted to the court do not save his untimely complaint under the delayed discovery rule. To reiterate, both Dr. Knapke's original February 2012 report and his second report of March 2013 leading to Zhang's recommitment to Patton State Hospital were described in Dr. Tumu's December 2014 evaluation report. And Dr. Bernhard's June 2015 report quoted Zhang as being familiar with Dr. Tumu's report, criticizing it as "'a big fraud, it is deceptive, it is harmful to me.'" Thus, even accepting as true Zhang's allegations that he had not seen either of Dr. Knapke's formal reports at the time, he was necessarily familiar with their general contents—Dr. Knapke's diagnosis that Zhang suffered from persecutory delusions—by June 2015. Accordingly, all causes of action based on allegations that Dr. Knapke reported that false diagnosis to the court accrued at least six years before Zhang's lawsuit was filed. (See, e.g., *Jolly v. Eli Lilly &*

17

*Co.* (1988) 44 Cal.3d 1103, 1110 ["[u]nder the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her"]; *Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1251 ["The limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry. Subjective suspicion is not required. If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation" (cleaned up)]; *McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 108 [same]; see also *State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 417 [a plaintiff is on inquiry notice when "'he at least suspects . . . "that someone has done something wrong" to him [citation], "wrong" being used, not in any technical sense, but rather in accordance with its "lay understanding"'"].)

Zhang's effort to avoid the preclusive effect of the governing limitations periods by alleging the harmful consequences of Dr. Knapke's 2012 and 2013 reports continued until 2020 as a result of his confinement as an MDO is misplaced. Zhang's claims against Dr. Knapke arise from Dr. Knapke's 2012 and 2013 reports to the court. Any causes of action relating to those discrete acts accrued years before the lawsuit was filed. (See *Vaca v. Wachovia Mortgage Corp.* (2011) 198 Cal.App.4th 737, 745 ["[I]f continuing injury from a completed act generally extended the limitations periods, those periods would lack meaning. Parties could file suit at any time, as long as their injuries persisted. This is not the law. The time bar starts

18

running when the plaintiff first learns of actionable injury [citation], even if the injury will linger or compound"].)  The "continuous violation" or "continuous accrual" doctrine, in contrast, involves recurring or continuous conduct, not ongoing effects based on prior misconduct.  (See, e.g., *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 823 [ongoing disability discrimination in employment]; *Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 786 [last overt act in a civil conspiracy to commit an ongoing fraud]; see also *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1200-1201 [recurring imposition of fraudulent charges for copier rental]; *Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1341 [recurring duty to pay music royalties].)[12]

Zhang's reliance on equitable tolling is similarly without merit.  "[E]quitable tolling is a narrow remedy that applies to toll statutes of limitations only 'occasionally and in special

---

[12]    Zhang does not—and cannot—allege a caretaking or custodial relationship existed between him and Dr. Knapke.  Accordingly, Zhang's allegations that the harsh conditions of his confinement through 2020 constituted elder abuse are immaterial for purposes of assessing the timeliness of his claims.  (See *Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 155 ["a claim of neglect under the Elder Abuse Act requires a caretaking or custodial relationship—where a person has assumed significant responsibility for attending to one or more of those basic needs of the elder or dependent adult that an able-bodied and fully competent adult would ordinarily be capable of managing without assistance"]; *Kruthanooch v. Glendale Adventist Medical Center* (2022) 83 Cal.App.5th 1109, 1129 [the Elder Abuse Act "does not apply unless the caretaking relationship is 'robust' and the measure of responsibility assumed by the caretaker is 'significant'"].)

situations.'" (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 724.) "[E]quitable tolling today applies when three 'elements' are present: '[(1)] timely notice, and [(2)] lack of prejudice, to the defendant, and [(3)] reasonable and good faith conduct on the part of the plaintiff.' [Citation.] These requirements are designed to 'balanc[e] . . . the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the [operative] limitations statute.'" (*Id.* at 724-725; accord, *Tarkington v. California Unemployment Ins. Appeals Bd.* (2009) 172 Cal.App.4th 1494, 1503, see *McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 102.)

In his briefs in this court Zhang insisted the delayed filing of his lawsuit should be excused because "[i]solation and fear of death threat prevented [him] from filing it earlier in prison, [and] the poor financial situation and unstable living conditions after release also delayed the legal work." Absent from this argument for equitable tolling is any indication that Dr. Knapke was notified of Zhang's claims at any time prior to Zhang's belated filing of his original complaint in late July 2021. In contrast, in *Lewis v. Superior Court* (1985) 175 Cal.App.3d 366, the lone equitable tolling (or "implicit tolling," as the *Lewis* court called it) authority cited by Zhang, the defendant and its insurer were on notice of the plaintiff's personal injury claim prior to the running of the limitations period, and active settlement negotiations were ongoing. (*Id.* at p. 377.) However, the plaintiff's lawyer, a sole practitioner, was struck by an automobile and suffered life-threatening head injuries five days before the limitations period

ran.  The lawsuit was filed only six weeks late, after the lawyer was released from the hospital and resumed his practice.

In sum, none of Zhang's causes of action was timely filed. Neither the delayed discovery doctrine nor equitable tolling saves his lawsuit.[13]

## DISPOSITION

The order dismissing Zhang's first amended complaint is affirmed.  Zhang's motion for sanctions is denied.  Dr. Knapke is to recover his costs on appeal.

PERLUSS, P. J.

We concur.

FEUER, J.              ESCALANTE, J.[*]

---

[13]    In his respondent's brief Dr. Knapke argued, because Zhang's claims were all based on Dr. Knapke's role as a court-appointed medical examiner, his conduct and reports were protected by Civil Code section 47, subdivision (b)(2)'s litigation privilege, as to Zhang's state law causes of action, and by quasi-judicial immunity as to Zhang's federal civil rights claim.  We need not address whether these defenses, not raised in the trial court, have merit and could properly be decided on demurrer.

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21